MARY A. CHENEY'S EXR., ET AL. v. E. C. STAFFORD, ET AL.
MARY A. CHENEY'S EXR., ET AL. v. CARRIE A. STAFFORD.

January Term, 1903.

Present: TYLER, MUNSON, START, WATSON, STAFFORD AND HASELTON, JJ.

Opinion filed October 15, 1903.

*Will—Construction—Power—Failure to Exercise—Effect—Invalid Conveyance.*

When a will contains two provisions so inconsistent that both cannot be carried into effect, the last will prevail.

A will which makes mandatory provision for the payment of a mortgage out of other property, creates an interest in the final beneficiaries of the mortgaged premises, of which the donee of the power cannot deprive them by failing to execute it.

Equity will secure to such beneficiaries the same benefit that they would have received if such power had been executed.

A power involving no trust fails upon the death of the donee.

Authority given in a will to sell certain "building lots" does not include the right to sell a lot on which a building then stood.

APPEALS IN CHANCERY. The first named case was heard on pleadings and an agreed statement of facts, at the September Term, 1901, Rutland County, *Start,* Chancellor. The last named case was heard on pleadings, a special master's report and exceptions thereto, at the September Term, 1902, Rutland

County, *Stafford,* Chancellor. *Pro forma* decree for the defendants and appeal by the orators in each case.

*Edward Dana, G. L. Rice,* and *Lawrence & Lawrence* for the orators.

So far as the provisions in the will affect the land standing in the name of Gershom Cheney, the attainment of the object for which the power was created has become impossible, and the power fails. *Sharpsteen* v. *Tillon,* 3 Cow. 651; *Hetzel* v. *Barber,* 69 N. Y. 1; *Jackson* v. *Ellsworth,* 6 Johns. 73.

This power is purely personal, and dies with him for whose benefit it was created and in whom it was reposed.

The power to sell lots to pay the mortgage on the land of the testatrix was likewise purely personal. The will, taken as a whole, indicates that it was the intention to leave the matter to his discretion.

The right to sell "building lots" cannot be construed to include the right to sell the lot on which the tenement house stood.

*Joel C. Baker* for the defendants.

The conditions of the will are positive and imperative the mortgages are to be paid by sale of building lots. There is no discretion given to the husband, and the whole scheme of the will is defeated, if that is not done.

The power of sale is coupled with a trust, which cannot be defeated. 1 Perry on Trusts, s. 248; *Greenough* v. *Wells,* 10 Cush. 571; *Montpelier* v. *East Montpelier,* 29 Vt. 22; *Ferre* v. *American Board,* 53 Vt. 162; Notes to 53 Am. St. Rep. 69.

The power to sell building lots on Jackson Avenue covered the whole tract of seventeen acres. The will makes no

distinction between the lots, and the fact that No. 2 was improved makes no difference.

MUNSON, J. These suits both relate to the will of Mary A. Cheney, and were heard together. The first bill prays for a construction of the will and directions to the executor. The second seeks to avoid a deed given by the husband of the testatrix, upon whom a certain power was conferred by the will. The clauses particularly in question are as follows:

"I give, devise and bequeath to my husband, Gershom Cheney, should he survive me, the use of all my estate, real and personal, of every description, during his natural life, but in case the use of such estate, together with the use of such property as he may own in his own right, shall be insufficient to support him comfortably and according to the requirements of his age, I hereby authorize and empower him to sell and convey such and so many of the building lots on Jackson Avenue in Rutland Village, as he shall from time to time judge and determine to be necessary to provide means for such support, and to use and appropriate so much of the proceeds for such support as he shall require.

"In case there shall exist any mortgage indebtedness at the time of my decease upon any real estate owned either by me or by my said husband, I hereby authorize and direct him to sell such and so many of said building lots as shall be necessary to raise means to pay off such mortgage indebtedness, and I direct my said husband to therewith pay off and discharge such mortgage indebtedness."

The will was executed in September, 1890. The testatrix then owned nineteen vacant lots that were left out of fifty which had been plotted and put on the market in 1873, and another of the fifty lots upon which a double tenement had been built before 1885. This ownership continued until her

death.  Both the vacant lots and the tenement property were located on Jackson Avenue.

The testatrix died in September, 1891.  At the time of her death, she owned a house and lot on South Main street, where the family had been living, and her husband also owned a house and lot.  There was a mortgage on each place.  The will provided for a sale of the home place by the executor after the death of the husband, and for the ultimate payment of nearly the entire avails of the sale to the children of Aletta A. Stafford, a daughter of the husband by a former wife.  The residuary legatees are three sisters of the testatrix.

The husband sold three of the vacant lots for his support, but did not exercise the authority conferred upon him as regards either mortgage, and a decree of foreclosure was obtained upon each at the March Term, 1896, with the equity limited to March 1, 1897.  The husband died January 29, 1897, and the decree against his place became absolute.  The executor sold the testatrix' place before the equity expired, and paid the decree out of the avails.

The provision made for the payment of the mortgage indebtedness by Gershom Cheney is mandatory in its terms.  It is suggested, however, that it should be construed to be optional, in view of the authority given him in a previous clause, to sell "such and so many" of the building lots as he might consider necessary to provide means for his support.  But this treatment of the two provisions, whatever may be said as to the degree of their inconsistency, would be at variance with established rules of construction.  In the case of two provisions which are so inconsistent that both cannot be carried into effect, it is held that the last must prevail; and there is certainly no reason here why the positive direction of the last should be

modified to give the largest possible scope to the discretionary power conferred by the first. The will was evidently framed in the belief that the building lots were sufficient to meet both requirements; and these provisions are to be. construed as directing the sale of enough of them to pay the mortgages, and authorizing the sale of as many of those remaining as might be needed to supplement the other means of support.

But in considering the effect of the direction concerning the mortgages, a distinction must be made between the two properties. The purpose of the provision, as regards the testatrix' house and lot, was not limited to the benefit of Gershom, and did not fail upon his death. The testatrix' scheme embraced not only the use of the property by Gershom, but the ultimate payment to his grandchildren of the money derived from a sale of it. The appropriation for the payment of this mortgage was one of several provisions by which the testatrix undertook to effect a division of her estate between her family and that of her husband. It is evident that in directing a sale of the homestead after her husband's death and the subsequent disposition of its avails, she had in mind the value of the premises, and not the uncertain margin that might remain after the mortgage had run for an indefinite period. This provision for removing the incumbrance created an interest in the final beneficiaries, of which the donee of the power could not deprive them by failing to execute it. Equity will secure to them the same benefit that they would have received if the property had come to the hands of the executor unincumbered.

But this effect cannot be given to the provision in its application to the other mortgage. The testatrix could not by the most positive direction compel her husband to pay off the mortgage on his own land. The authority given amounted only to a gift which he could accept or reject at his pleasure.

It conferred no interest upon any other person, for, after relieving the property from incumbrance, he could have disposed of it as he saw fit.    This was a mere power—a mandate involving no trust,—and it failed upon the death of the donee. We know of no ground upon which the heirs of the donee can now require Mrs. Cheney's estate to do for the benefit of the donee's descendible property what the donee himself thought best to leave undone.

*The pro forma decree dismissing the bill praying for a construction of the will is reversed, and the cause is remanded with instructions that a decree be entered construing the will in accordance with this opinion.*

In June, 1893, Mr. Cheney concluded it was necessary for his comfortable support that he have the attendance of his granddaughter, Carrie A. Stafford; and she became an inmate of his family, and gave him through the remainder of his life such care and attention as she could outside of school hours, and was to receive fair compensation therefor.    On the 22nd day of July, 1895, he gave her a deed of the tenement property before described, as compensation for the services she had rendered him and such as she might thereafter render, reciting therein his right to make the conveyance under the power given him to sell building lots for his support.    This is the deed which the executor asks to have set aside.

The term "building lot" is ordinarily used to designate a parcel of land which is held or offered as a place suitable to be built upon.    When the property is put to the intended use, it ceases to be a building lot and becomes a house and lot.    It would require a forced construction to bring within this provision a lot upon which a tenement house had stood for years.    There is no purpose disclosed in the will that calls for this forced construction.    In executing a deed of the tenement

property Mr. Cheney was outside the authority given him, and the orators are entitled to have his conveyance decreed to be invalid.

*The pro forma decree dismissing the bill which seeks an avoidance of the deed is reversed, and the cause is remanded with instructions that a decree be entered in accordance with the prayer of the bill.*