ASAHEL W. WARNER'S ADMR. v. MARY L. BRONSON.

January Term, 1908.

Present: TYLER, MUNSON, and WATSON, JJ.

Opinion filed May 7, 1908.

*Wills—Construction—Conditions Precedent and Subsequent— How Determined—Presumption of Testacy—Rights of Legatees—Lapse of Legacies Charged on Land—Charged on Mixed Fund—Equitable Lien—Foreclosure—P. S. 2890 —Commissions on Decedent's Estate—Allowance of Claim— Effect—Master's Report—Exceptions—Sufficiency—Homestead—Set off to Widow—Land Charged with Legacies— Effect—Equity—Laches—Costs in a Restrained Law Action.*

Whether a condition in a will is precedent or subsequent is not to be determined solely from the phraseology of the conditional clause, as there are no technical words distinguishing either class, from the other, but the testator's intent must be gathered from the whole instrument.

If the language of the whole will shows that the act on which the estate depends does not necessarily precede the vesting of the estate, but may accompany or follow it, the condition is subsequent.

It will be presumed that a testator intended neither to die wholly or partially intestate, nor to become so after his death.

Where it appeared that when a will was made the testator's farm, stock, and farming tools were in the possession of his son, under a contract between them whereby the son was annually to account for one-half of the profits, and the will provided that the son should continue to hold the farm under the terms of the contract as long as the testator's wife should live, paying the testator's share of the profits to her, "and upon the decease of my said wife and on the fulfillment of the aforesaid contract" with the son "on his part to be performed as aforesaid" the son should take all of the testator's real estate including the stock and tools on the farm, to be his forever, conditioned on his paying certain specified legacies, the provision for "the fulfillment of the aforesaid contract," under which the son was to operate the farm during the wife's life estate therein, is a condition subsequent, and the son was vested with the title to the property upon the testator's death, subject to the wife's life estate, and on condition of payment of the legacies.

The legacies were an equitable lien on the real estate and the remainderman took only an equity of redemption that could be foreclosed, and his grantees with notice of the incumbrances stood in his shoes.

On appeal, exceptions to a master's report that are not founded on objections made before the master will not be considered.

Where land is devised, charged with the payment of legacies, subject to a life estate, and all matters pertaining to the settlement of the estate are of record in the probate court, and the remainderman conveys the land to one who, as part consideration therefor, covenants to pay all the legacies, the grantee's widow, so long as such legacies remain in force and unpaid, cannot have a homestead set off to her in the land free of incumbrance.

Where land, live stock, and farming tools were devised charged with the payment of legacies, and the devisee subsequently conveyed the land to one who, as part consideration therefor, covenanted to pay the legacies according to the provisions of the will, the charge on the mixed property, as against the grantee and those claiming under him, was thereby made to rest primarily on the land in exoneration of the personalty.

A legacy given absolutely to be paid at a future day vests, if the legatee survives the testator, though the legatee die before the time of payment; but, where the legacy is charged on real estate only, and the legatee dies before the time of payment, the legacy lapses unless the will shows that the payment was postponed as a convenience to the estate and not to the legatee, in which event it does not lapse.

Where legacies are charged upon a mixed fund of real and personal estate, and only the real estate remains, the rule governing the lapsing of legacies charged upon real estate alone applies.

Where a testator charged land and personal property with legacies to be paid within one year after the death of a life tenant, the payment being postponed for the convenience of the estate, and not because of the circumstances of the legatees, and only the land remained wherewith to pay them, the legacies vested at the testator's death, and did not lapse upon the decease of the legatees before the time of payment, though the legacies were not bequeathed to the legatees "and their heirs."

Where a master finds solely from the report of the commissioners on a decedent's estate, received without objection, that a certain sum was due the estate on a note, an exception to his report because he received in evidence the note itself and the indorsments thereon is without force.

The allowance by the commissioners on a decedent's estate of a sum due from the estate on a note is equivalent to a judgment, and merges the original claim, and the burden is upon one alleging the outlawry of that judgment to prove it.

On a hearing before a master in a suit to foreclose an equitable mortgage on property charged with the payment of legacies, *held* not error for the master; in his discretion to admit certain evidence in rebuttal, where the party objecting was allowed to introduce evidence in reply.

Where a party at the hearing before a master objected to evidence only on the ground of incompetency of the witness, he will be confined to that objection in the Supreme Court.

Where a testator devised land to his son, subject to a life estate in the widow, and charged with the payment of certain legacies, and, pending the life estate, the son conveyed his interest, the purchaser covenanting to pay the legacies, and subsequently, and after the widow's death, the administrator with the testator's will annexed, the estate being still unsettled, leased the land, and later, after the death of the purchaser from the son, a homestead in the land was set off to the purchaser's widow, she could not maintain ejectment against the tenant for so much of the land as was included in her homestead, since she stood in the shoes of the son, and the tenant's possession was that of the administrator, who had a first lien on the property for the payment of the debts and the expenses of administration.

Although, under P. S. 2890, providing that, in proportion to their several amounts, legacies are liable for the payment of the debts and expenses of administration, legatees may by foreclosure enforce their legacies against land charged with the payment thereof, and the land standing in the place of the legacies would then be liable for the debts and expenses, yet equity, to avoid this circuity of action and a multiplicity of suits, will allow the administrator, in place of the legatees, to enforce the unpaid legacies by foreclosure and hold the proceeds or the property, to pay debts and expenses of administration, and in trust for the legatees, all persons interested being before the court.

Where the owner of a homestead in land charged with legacies that were unpaid, brings ejectment against a tenant of the administrator, and the administrator, electing to resort to chancery, files his bill, and obtains a temporary injunction restraining the ejectment suit, in less than a month after that action was docketed and more than two months before its first term, he did not so delay his election as to entitle defendant to her costs in the ejectment suit.

APPEAL IN CHANCERY. Heard on the pleadings, master's report and exceptions thereto, at the June Term, 1907, Windsor County, *Waterman,* Chancellor. Decree that defendant pay the petitioner on or before a specified day the sum found to be the proportionate amount of the unpaid legacies chargeable on her homestead, with interest and costs, or be forever barred of all equity of redemption in the premises; and that defendant be forever enjoined from prosecuting her action of ejectment against orator's tenant. The defendant appealed.

Asahel W. Warren died testate in June, 1870, owning the real estate described in the bill, and some little personal property. His will was duly probated and his son, Asahel B. Warren was appointed executor thereof and performed the duties of his appointment until about 1885, when he settled his account and Simon N. Bronson, a son-in-law of the testator, was appointed administrator with the will annexed. Simon N. continued in this position until his death, March 25, 1897. On the 27th day of the following month the orator was appointed administrator with the will annexed, thus continuing to the present time.

At the time of the execution of the will Asahel B. was in possession of the farm together with the farming tools and stock thereon under a lease from his father for and during the latter's natural life. By the terms of the lease the stock, with some exceptions not material here, was owned by the parties in equal shares. The farming tools were to be furnished by the father, all necessary repairs thereon to be at the joint and equal expense of them both. Each to furnish half the seeds for sowing and planting, and to pay half the taxes on the farm and stock. The son to account annually to his father for one-half of the produce and profits made on the farm. And reserving to the father and his wife the right of occupying such part of the house and premises as they might choose for their own convenience and accommodation. The father was survived by his wife and his children named in the will. The will contained provisions as follows:

"As my son, Asahel Bailey Warren, owns one-half the stock and farming tools on the farm and has carried on the farm for the last two years or so I order and direct and such is my will that he continue to do so and upon the same conditions and terms he has under the contract with me so long as my wife Rhoda shall live and I hereby give to her the use of all my real estate and stock and farming tools during her life as aforesaid for her support and for the support of our daughter Elizabeth P. who is an unfortunate and helpless child."

"It is my will that upon the decease of my said wife and on the fulfillment of the aforesaid contract with said Asahel B. on his part to be performed as aforesaid, I give, devise and bequeath to my said son Asahel B. all of my real estate, includ-

ing the Powers lot so-called, also the stock and farming tools upon said farm to be his and his heirs forever, upon the following conditions to wit: that he pay to the legal heirs of my estate hereinafter named the sum of four thousand dollars ($4,000) as follows to wit: to my said daughter Elizabeth Paulina, one thousand five hundred dollars ($1,500) within one year after the decease of my said wife with interest from the time of her my said wife's decease which sum I give, devise and bequeath to my said daughter Elizabeth P. It is my will that my said son Asahel B. pay the balance of the said four thousand dollars, that is two thousand five hundred dollars ($2,500) in equal shares to my children Rhoda Ann Warren, James Whipple Warren, Sarah Jane Bronson, and Asahel Bailey Warren, and I hereby give and bequeath to each of my four children last named one-fourth part of said $2,500, or six hundred and twenty-five dollars to each, to be paid by the said Asahel B. within one year after the decease of my said wife. Provided however that such sum as the said James W. may be owing me for money lent him shall be deducted from his share as aforesaid and the balance only paid him, but if that shall amount to more than his share I remit the balance.''

"My desire is and I hereby recommend that the terms of the lease now existing in writing between me and said Asahel B. be continued, substituting my said wife in my place therein.''

"I give all my household furniture to my beloved wife to be hers and her heirs forever.'' There was no residuary clause.

Asahel B. had possession of the real estate before, up to, and continuously after his father's death till September 25, 1885, at which time, by indenture signed by himself and his wife, and by Simon N. Bronson, he for himself and his heirs, conveyed all of his right, title, interest, property and estate in and to the lands devised by said will to Simon N. his heirs and assigns forever; and Asahel B. also thereby for himself and his heirs, remised, released, and forever quitclaimed to Simon N. his heirs and assigns, "all the right, title, interest, or demand'' that he (Asahel B.) then had, or which he and his heirs might thereafter have in the estate of his mother, Rhoda Warren, at her decease, or in the estate of his sister, Elizabeth Paulina Warren at her decease; and as a part consideration thereof the said Simon N. then and there covenanted and agreed

to "do and perform all the conditions in said will expressed by me (Asahel B.) to be done and performed, and pay all the legacies therein set forth to be paid at the time and in the manner in said will set forth, save only the legacy in said will set forth to be paid to me, said Asahel B." This indenture was duly recorded September 29, 1885. Simon N. immediately took possession of the premises under this conveyance and thus remained until his death, March 25, 1897. Thereafter the premises were in possession of his family till June 9, 1903, at which time Rhoda Warren, the widow of Asahel W. deceased.

Asahel B. carried out the conditions of the devise of said real estate, as to the support of the widow, up to the time of his conveyance to Bronson, after which they were performed by Bronson and his family until her death.

The legatee Sarah Jane Bronson was the first wife of Simon N. She died March 20, 1877, leaving surviving her, her said husband, and three children, Lena Maria Bronson, Fred Warren Bronson, and Charles Rupert Bronson. Lena Maria, never having married, died July 30, 1903, intestate, and without issue. The legatee Rhoda Ann Warren was the second wife of Simon N. She died April 4, 1890, testate, survived by her husband, but leaving no issue. The legatee Elizabeth Paulina Warren died on the first day of February, 1894, leaving no issue.

*Davis & Davis* for the defendant.

The legacies of those children who predeceased the widow lapsed, and ceased to be a charge on the land. This is not a devise of the corpus of the real estate on the death of the widow, nor a gift of the "reversionary interest," as in *Burton* v. *Provost,* 75 Vt. 199; but here is an absolute devise of the realty and a "bequest" of certain money legacies to the testator's children who should be living at the death of his widow. Shouler, Wills, §562. The legacies are not made a charge on the real estate as in *Dunbar* v. *Dunbar,* 3 Vt. 472.

*Fred C. Davis* and *Stickney, Sargent & Skeels* for the petitioner.

The legacies to Elizabeth Paulina, Rhoda Ann and Sarah Jane vested in them at the death of the testator in June, 1870. *Lyman et ux.* v. *Vanderspiegel et al.,* 1 Aik. 275; *Burton* v. *Provost,* 75 Vt. 199; *Re Tucker's Will,* 63 Vt. 104; *Jones* v. *Knappen,* 63 Vt. 391.

A bill to foreclose is the proper remedy. *Dunbar* v. *Dunbar,* 3 Vt. 472; *Scott* v. *Patchin,* 54 Vt. 253; *Casey* v. *Casey,* 55 Vt. 518; *Hoyt* v. *Hoyt,* 77 Vt. 244.

WATSON, J. The defendant Mary A. Bronson insists in her answer by way of demurrer that there is no equity in the bill, and that the orator has an adequate remedy at law. This demurrer on hearing before trial on the merits was overruled and the bill adjudged sufficient. The same questions are presented by her here on appeal, but inasmuch as the master's report shows substantially the same material facts as are alleged in the bill, and the same questions are raised thereon, the rights of the defendant are fully considered and determined on the merits.

No claim is made but that by the gift of the use of all the testator's real estate, stock, and farming tools to the wife during her life for her support and for the support of the daughter Elizabeth P. the widow took a life estate. It is contended, however, that under the provisions of the will the real estate, stock, and farming tools did not vest in Asahel B., or his grantee, until the death of the widow and "on the fulfillment of the aforesaid contract with said Asahel B. on his part to be performed as aforesaid." In other words, that the vesting of the property in Asahel B. was made contingent upon his full performance of the terms of the lease, substituting his mother in place of his father therein, extended to the time of her death. The master finds that the condition imposed by the will in this behalf was fully performed by Asahel B. and his grantees until the decease of the mother, and no question is raised thereon. Hence the character of the condition is material only because of its bearing on the present status of some of the legacies in question.

Whether the condition was precedent or subsequent is not to be determined upon the mere words used. There are no technical words distinguishing either class from the other. The

same words will make a condition of either character according to the intent of the testator to be gathered from the whole instrument. Without the words "and on the fulfillment of the aforesaid contract with said Asahel B. on his part to be performed as aforesaid," there would be nothing indicating that a performance of the conditions of the lease until terminated by the death of the mother was intended as a condition to the property vesting under the bequest over. With these words thus used, however, there is force in the contention made.

The manifest design of the testator was that during the life of his widow she should have the use of the property for her support and for the support of their daughter Elizabeth P., in the same form and with the same conveniences and accommodations, as the use had been enjoyed by himself and wife in his lifetime. Beyond its term, the lease contains nothing which might not be found in the ordinary written contract for letting such property to tenants to the halves. In itself, therefore, neither the lease nor the required extension of term shows any intention to give effect different in nature from that naturally resulting from a devise of the use to the widow for the same purpose with a gift over of the *corpus,* possession to be had at her death. Manifestly the life estate to his wife for her support and for the support of their unfortunate and helpless child during the same period was the first purpose of the testator; yet it is equally manifest that at the end of the life estate he designed to make a division of his property among his children by giving all the real estate, also the stock and farming tools on the farm, to the son, to be his and his heirs forever, on condition that he pay the legacies specified to the daughters within the time limited; and the will creates no residuary estate, nor contains any provision looking to the happening of any contingency which in the mind of the testator would prevent the son from taking the property accordingly. This strongly indicates that such a contingency would be contrary to the general spirit of the will and was not intended by the testator. It is said that when a man makes a will it is fair to presume that he does not intend to die intestate, nor to become so after death. *Weatherhead* v. *Stoddard,* 58 Vt. 623, 5 Atl. 517. There is the same presumption against an intention of partial intestacy. *In re McClure,* 136 N. Y. 238.

The provisions of the lease that each party should pay half the taxes "assessed upon the farm and stock," and that the son should "annually account" to his mother "for one-half of the produce and profits made on the said farm" are such as to permit and perhaps require performance after the vesting of the estate. It might happen that taxes thus to be paid were.not yet even assessed, or if assessed not payable, at the time of her decease, or that the time for the next annual accounting was yet some months ahead. In these circumstances the taxes would need to be paid and an accounting had subsequent to her death. In *Finlay* v. *King's Lessee,* 3 Pet. 346, 7 L. ed. 701, the Court, through Mr. Chief Justice Marshall, said: "If the language of the particular clause, or of the whole will, shows that the act on which the estate depends must be performed before the estate can vest, the condition is of course precedent; and unless it be performed, the devisee can take nothing. If, on the contrary, the act does not necessarily precede the vesting of the estate, but may accompany or follow it, if this is to be collected from the whole will, the condition is subsequent."

We hold therefore that the provision for the fulfillment of the contract extended under which Asahel B. was to continue to carry on the farm during the term of the life estate was a condition subsequent, and that on the death of the testator Asahel B. was vested with the title and ownership of the real estate, stock, and farming tools, subject to the life estate, and on condition that he pay the legacies specified in, and according to the terms of, the will. *In re Tucker's Will,* 63 Vt. 104, 21 Atl. 272; *Jones* v. *Knappen,* 63 Vt. 391, 22 Atl. 630; *Burton* v. *Provost,* 75 Vt. 199, 54 Atl. 189.

It is further contended that the legacies do not constitute a charge on the real estate. But we think it clear that the testator intended to make the payment of them a charge, by way of an equitable lien, on the property of the bequest. It follows that the remainderman took but an equity of redemption which may be foreclosed in a court of equity. His grantees, having notice of the incumbrances, can stand no better. *Dunbar* v. *Dunbar,* 3 Vt. 472; *Scott* v. *Patchin,* 54 Vt. 253; *Casey* v. *Casey,* 55 Vt. 518; *Lovejoy* v. *Raymond,* 58 Vt. 509, 2 Atl. 156.

On February 18, 1891, Fred C. Davis was duly appointed administrator *de bonis non* with the will annexed of Rhoda Ann

(Warren) Bronson's estate. As evidence of this appointment a certified copy of the appointment was received, the defendant objecting on the ground that the copy of the will was not included therein. The master reports that if this copy was inadmissible because of the objection he cannot find that the appointment was ever legally made, except from the testimony of Davis himself that he had had regular letters of administration, but had lost or mislaid the same and could not produce them, and that he was then acting as such administrator. The master finds his oral evidence in this behalf to be true, but the question of its sufficiency to establish his appointment and authority is submitted to the court. We understand the question here submitted is as to the *legal* sufficiency of evidence. The report does not show that any objection was made to this oral testimony, for which reason, if for no other, the exception to the report because of its reception is without force. *Royce* v. *Carpenter*, 80 Vt. 37, 66 Atl. 888. In these circumstances we think the master might well base a finding thereon of such appointment. This being so the question of the admissibility of the certified copy becomes immaterial.

The defendant Mary A. Bronson was the third wife of Simon N. and after his death remained on the premises in question for some years and had or claimed to have some interest therein by reason of her marital rights. She moved therefrom some time about 1888 or 1889, and before the death of the life-tenant. After the latter's death a homestead in the premises was set out to Mary A. by commissioners appointed by the probate court for that purpose, whose report was returned to the court on the 9th day of June, 1904. The report was duly accepted by the court and no appeal taken therefrom. It is contended by Mary A. that since her homestead was thus set out and no appeal taken it became established, and that she is entitled thereto free of any charge of legacies thereon. The matters connected with the settlement of the estate of Asahel W. were all of record, and all persons taking under the will had at least constructive notice and are bound thereby. Moreover, she can take no greater estate than did her husband who expressly agreed in the indenture to him, as a part of the consideration thereof, to do and perform all the conditions expressed in the will to be done and performed by Asahel B. "and pay all the

legacies therein set forth to be paid at the time and in the manner in said will set forth, save only the legacy" to Asahel B. The homestead therefore could not be set out free of such incumbrance so long as the legacies remained in force and unpaid; nor was it even in form so done, for the commissioner's report filed in the probate court and by it accepted and ordered to be recorded expressly states that the homestead is set out "if permissive after the settlement of A. W. Warren's estate," which in effect leaves it as before subject to the charges created by the will. Consequently in decreeing that the amount of the legacies should be apportioned between the homestead and the rest of the land on the basis of their comparative values there was no error. Nor is there anything in the record indicating, as is argued, that the "Powers lot" was not included therein.

It is urged that the stock and farming tools should bear their share of the burden of the legacies, as well, and that they should be accounted for. In this respect what finally became of the personal property is immaterial. For since Simon N. in the conveyance of the real estate to him, on record, covenanted to pay the legacies according to the provisions of the will, the charge on the mixed property, as against him and all persons claiming under him, was made to rest primarily on the real estate in exoneration of the personalty, and his widow in her right of homestead can stand no better.

The legacy to James Whipple Warren and the one to Asahel Bailey Warren have been paid or adjusted, and no claim is made regarding them. The three daughters, Sarah Jane Bronson, Rhoda Ann Warren, and Elizabeth Paulina Warren, survived their father but died before the time when the legacies were payable. It is contended that the legacy to each of the daughters was personal and that it lapsed because not given to her "and her heirs." The first two of these bequests are together and the words of the will are: "and I hereby give and bequeath to each of my four children last named" the sum named, "to be paid by the said Asahel B. within one year after the decease of my said wife." And the other the son is directed to "pay * * * to my said daughter Elizabeth Paulina," "within one year after the decease of my said wife with interest from the time of her my said wife's decease which sum I give, devise and bequeath to my said daughter Elizabeth P." In

every instance it is a gift immediate to the daughter, though not to be paid until a specified time after the death of the mother who as we have seen took a life use of the whole estate, except the household furniture which was given to her absolutely. Clearly the postponement of the time of payment was for the convenience of the estate, and not owing to the circumstances of the legatees. The legacies are made chargeable upon a mixed fund of personal and real estate. This is as was the case of *Lyman* v. *Vanderspiegel*, 1 Aik. 275. There the legacies payable twelve months after the testator's death were charged upon a mixed fund. One of the legatees survived the testator but died before his legacy was payable. The question was whether the legacy lapsed. The Court stated the rule supported by the authorities to be that a legacy given absolutely to be paid at a future day vests if the legatee survives the testator, though he die before the time of payment; but when it is given as a charge on real estate only and the legatee dies before the day of payment the legacy lapses, unless it appears by the will that the time of payment was postponed as a convenience to, the estate, and not to the person to be benefited, in which case it does not lapse. It was further stated that where a legacy is charged upon a mixed fund the decisions were less uniform. It was held that time did not attach to the legacy, but only to the time of payment, and that the legacy vested immediately on the death of the testator. How the rule may be where legacies are charged upon a mixed fund of real and personal estate we need not inquire; for of the property on which the legacies here in question were made chargeable only the real estate remains, consequently the rule where the charge is upon land determines. *Richardson* v. *Greese*, 3 Atk. 65; *Duke of Chandos* v. *Talbot*, 2 P. W. 601; *Attorney General* v. *Milner*, 3 Atk. 112. We hold therefore that the three legacies in question became vested at the death of the testator and did not lapse on the death of the legatees.

The report of commissioners for the allowance of claims against the estate of Asahel W. Warren was received in evidence without objection. From it the master finds that there was due from the estate to the daughter, Rhoda Ann (Warren) Bronson, the sum of $422.58 on a note which she held against her father and allowed against his estate with interest thereon, which has not been paid. Since this finding was made solely on the

commissioner's report, the exception to the report of the master because he received in evidence the note itself and the indorsements on the same is without force. It is further urged that this note was outlawed—that the findings do not show who made the indorsements. But the allowance of the note by the commissioners on the estate was equivalent to a judgment and merged the original claim. *Lowry* v. *Stevens,* 6 Vt. 113. If the defendant relies upon an outlawry of that judgment, the burden is on her to show it, which she has not done.

The master further found from the commissioner's report that Asahel W. at the time of his death owed other debts to the amount of $847.11, no part of which has been paid.

During the hearing before the master the orator's solicitor, as well as the master, had in the presence of defendant's solicitor, he assenting thereto, considered that allegations in the bill that debts, legacies, and expenses had not been paid, not denied in the answer, ought to be taken as admitted. But the defendant's solicitor at the close of the defendant's evidence repudiated this position, whereupon the orator was allowed, in the discretion of the master, to introduce evidence showing that the legacies had not been paid, to which the defendant objected as not in rebuttal. The defendant was permitted to introduce evidence in reply thereto. In this there was no error.

The witness Fred C. Davis was allowed to testify that he had searched the records of the probate court and could not find that any person other than Asahel B. Warren, Simon N. Bronson, and the orator had ever been executor or administrator of Asahel W. Warren's estate. The defendant objected to this evidence, assigning as the reason only the incompetency of the witness. This ground is not urged here, but the argument is that the evidence was wholly immaterial,—quite a different thing. A new ground of objection is not available. *Royce* v. *Carpenter and Taylor,* 80 Vt. 37.

It is further contended that the administrator of Asahel W. Warren's estate cannot maintain this bill to foreclose, that no one can, other than the legatees, either jointly or severally. As we have already observed, that estate yet remains in an unsettled condition. The defendant, Mary A. Bronson, moved away from the farm in question three or four years before the death of the

life-tenant which occurred June 9, 1903. Later in that month
the orator leased the farm to Charles R. Bronson who took
possession thereof under his lease and has hitherto thus held it.
After the homestead was set out to Mary A. in the settlement of
her husband's estate, she brought her action of ejectment against
the tenant to eject him from so much of the premises as were
included in the homestead, and for damages. This action still
pending is perpetually enjoined by the decree from which this
appeal was taken, and herein error is claimed. The tenant
was in possession under the administrator of Asahel W. War-
ren's estate, who had a first lien on the property for the pay-
ment of debts and expenses of administration, and his possession
was the administrator's possession. Mary A. stands in the place
of a devisee, and in the circumstances disclosed by the record
before us can not bring an action to recover the seisin or posses-
sion of the land, or for damages done thereto. V. S. 2450;
*Austin* v. *Bailey,* 37 Vt. 219.

There is no estate other than the realty on which the legacies
are charged. The value of the legacies is wholly in the land
which in effect was set apart by the testator for their payment.
In proportion to their several amounts, the legacies are made
liable for the payment of the debts and the expenses of admin-
istration. V. S. 2497. The legatees could enforce their legacies
against the land by foreclosure, and the land, standing in place
of the legacies, would then be liable for the debts and expenses
of administration, to be enforced by the administrator. But
such circuity of action and multiplicity of suits is unnecessary.
As "the court of equity in all cases delights to do complete jus-
tice, and not by halves," the administrator in the place of the
legatees, may by bill enforce the unpaid legacies, and hold the
proceeds or the property to satisfy the debts and expenses of
administration, and in trust for those entitled to the legacies,
all persons in interest being brought before the court, in order
that all rights in the matters in controversy may be bound by
the decree and complete justice be done. Story Eq. Pl. sec.
174; *Knight* v. *Knight,* 3 P. W. 331.

Finally the defendant says that costs should be decreed her
in the ejectment suit, citing *Enright and Fitch* v. *Amsden,* 70
Vt. 183, 40 Atl. 37. In that case the orators defended the action
at law to the extent of a trial on the merits in the county court,

and on exceptions in this Court.  Then after considerable time they resorted to equity.  The Court said that instead of thus putting the defendant to the expense of double litigation, they should have elected certainly as early as the first term of the action at law whether they would resort to chancery or not; and not doing so, they should receive costs therein only to and including that term, and should pay the subsequent costs of that action.

The case before us is different.  Here the orator was quite expeditious in making his election.  His bill was filed and the temporary injunction issued restraining further prosecution of the action at law in less than a month after it was docketed in the office of the clerk of the county court, and more than two months before the first term of that case.  In these circumstances the claim of the defendant in this respect is without equity.

*Decree affirmed and cause remanded.  Let a new time of redemption be fixed below.*