IN RE EDWARD W. PECK'S ESTATE.
E. STUART PECK ET AL., APPELLANTS.

January Term, 1929.

Present: WATSON, C. J., POWERS, SLACK, MOULTON, and CHASE, JJ.

Opinion filed February 6, 1929.

*Theodore E. Hopkins* and *William L. Woodward* (of New York City) of counsel, for the appellants.

*Max Powell* and *Douglas Campbell* (of New York City) for the appellees.

SLACK, J. Edward W. Peck died at Burlington, Vermont, June 26, 1906. He left a will executed April 25, 1904, which contained the following provision: "The rest and residue of my estate I give to my executors in trust, to pay over the net income thereof to the following named beneficiaries, respectively, during their respective lives, semi-annually, *viz.*: To my niece, Katharine Keyes Peck, six-eighths thereof, to my nephew, Benjamin M. Peck, one-eighth thereof, to my nephew, John H. F. Peck, one-eight thereof. And it is my will that, upon the death of any of them, the income, herein provided for such deceased beneficiary, be paid to the survivors, or the survivor, of them; and, at the death of the survivor, said residue shall be divided among the heirs of the said respective beneficiaries, in the same proportion as the income is given." This provision was changed by a codicil executed December 8, 1904, the material part of which reads as follows: "Whereas, in the residuary clause of my said will I provided that the income of the residue of my estate should semi-annually be paid in certain proportions to Katharine Keyes Peck, Benjamin M. Peck & John H. F. Peck, for life, & that, upon the death of any of them, the share, theretofore paid to such deceased beneficiary, should thereafter be equally paid to the survivors, or survivor, of them; and that, at the death of the survivor, said residuary estate should be divided among the heirs of said respective beneficiaries in the same proportion, as directed for the payment of said income: Now, I hereby change and revoke so much of said residuary clause of my will as directs the disposition of the share of income of a deceased beneficiary, and also the residuum after the death of all said beneficiaries, and, in lieu thereof, I direct as follows, *viz.*: That if the said Katharine Keyes Peck shall die before the other beneficiaries, or either of them, then the share of income, theretofore paid to her, shall thereafter be paid to her

heirs; that, upon the death of said Benjamin M. Peck & John H. S. Peck, respectively, the share of said income, theretofore paid to such deceased beneficiary, shall thereafter be paid to the said Katharine Keyes Peck, if she be surviving; otherwise to her heirs.

I direct that this codicil be annexed to my last will & I hereby confirm my said will in all respects, save as affected by this, and my former, codicil.''

Katharine Keyes Peck, the survivor of the three beneficiaries specifically named in that part of the will and the codicil here in question, died May 2, 1928, whereupon the trustee of the trust estate applied to the probate court for a final decree of distribution of the trust property, and such proceedings were thereupon had that on October 8, 1928, that court entered a decree whereby the heirs of Katharine Keyes Peck received six-eighths of the trust property, the heirs of Benjamin M. received one-eighth of such property, and the heirs of John H. F. received the remaining one-eighth. From such decree E. Stuart Peck and others, heirs of the testator but not recipients under said decree, appealed on the ground that the codicil, in effect, revoked the provision of the original will relating to the disposition of the principal of the trust property after the death of the last life beneficiary, and, consequently, such principal vested, as intestate property, in the heirs of the testator, determined as of the date of her death, and should have been decreed accordingly.

It is a trite saying that no will has a brother. This is because wills are so dissimilar in the scheme of disposition disclosed, the language employed, the attending circumstances, etc. For this reason the reported cases are of little aid in the determination of a particular case beyond the rules of construction which they furnish. Such of these rules as we deem essential in the instant case will be noticed before the provisions of the will are considered. The master rule is that the intention of the testator, so far as it may be legally carried out, when ascertained, is to be declared and enforced. *In re Robinson's Estate,* 90 Vt. 328, 98 Atl. 826; *Boyce et al.* v. *Sumner,* 97 Vt. 473, 124 Atl. 853; *In re Mansur's Will,* 98 Vt. 296, 127 Atl. 297; *In re Carter's Will,* 99 Vt. 480, 134 Atl. 581; *Crossman* v. *Crossman's Estate,* 100 Vt. 407, 138 Atl. 730. To aid in ascertaining the intention of the testator in this case, the following rules of

construction are invoked: Force and effect must be given to every part of the will, if possible, since it is not to be presumed that the testator used an unnecessary word, or one to which no proper force can be given. *Boyce et al.* v. *Sumner, supra; Shepard's Heirs* v. *Shepard's Estate,* 60 Vt. 109, 14 Atl. 536.

 A will and codicil must be construed together as constituting one instrument. *Boyce et al.* v. *Sumner, supra; Thompson's Admr.* v. *Churchill's Estate,* 60 Vt. 371, 14 Atl. 699. Where a will contains two provisions so inconsistent that both cannot be carried into effect, the last will prevail. *Cheney's Exr.* v. *Stafford,* 76 Vt. 16, 56 Atl. 88. Likewise, where the provisions of a will and codicil cannot both be given effect, that of the codicil, being the latest expression of the testator's desires, will control. *Sturgis* v. *Work,* 122 Ind. 134, 22 N. E. 996, 17 A. S. R. 349; *Lamb* v. *Lamb,* 11 Pick. (Mass.) 371. In construing a will and codicil a disposition made by the former is not to be disturbed farther than is absolutely necessary to give effect to the latter. *Wardner* v. *Seventh Day Baptist Memorial Board,* 232 Ill. 606, 83 N. E. 1077, 122 A. S. R. 138; *Herzog* v. *Title Guarantee, etc., Co.,* 177 N. Y. 86, 69 N. E. 283, 67 L. R. A. 146; *In re Sigel's Estate,* 213 Pa. 14, 62 Atl. 175, 1 L. R. A. (N. S.) 397, 110 A. S. R. 515; *Frelinghuysen* v. *New York Life Ins. & Tr. Co.,* 31 R. I. 150, 77 Atl. 98, Ann. Cas. 1912B, 237. See, also, *Meckel* v. *Johnson,* 231 Ill. 540, 83 N. E. 209; *Mason* v. *Smith,* 49 Ala. 69; Jarman on Wills, vol. 1, pp. 160, 161; Redfield on Wills, 362. This principle is too well settled to require a discussion of the authorities on which it rests. Some of the cases hold that an absolute gift by a will cannot be cut down by a later provision unless the intention to do so is expressed in language as plain, definite, and certain as is used in making the original gift. *Herzog* v. *Title Guarantee, etc., Co., supra; Banzer* v. *Banzer,* 156 N. Y. 429, 51 N. E. 291, but in *Home for Incurables* v. *Noble,* 172 U. S. 383, 43 L. ed. 486, 19 Sup. Ct. 226, Mr. Justice White speaking for the Court said: ''If there be a clear gift, it is not to be cut down by anything subsequent which does not with reasonable certainty indicate the intention of the testator to cut it down, but the maxim (the rule above stated) cannot mean that you are to institute a comparison between the two clauses as to lucidity.'' We adopt the latter rule. Another rule of vital importance in the instant case in

view of the appellants' claim is that when a person makes a will it is to be presumed that he did not intend to die intestate, nor to become so after his death. *Warner's Admr.* v. *Bronson,* 81 Vt. 121, 69 Atl. 655; *Weatherhead* v. *Stoddard,* 58 Vt. 623, 5 Atl. 517, 56 A. R. 573. The same presumption obtains against an intention of partial intestacy. *Warner's Admr.* v. *Bronson, supra; In re McClure,* 136 N. Y. 238, 32 N. E. 758.

██ ██ Applying these rules to the case before us, what is the result? There can be no doubt but that the testator intended by the original will to dispose of the trust estate when the object for which it was created ceased to exist. It is equally clear from the ''whereas'' clause of the codicil that, when that was executed, he had not overlooked or forgotten the provisions of the will respecting the disposition of the income of the trust estate and the estate itself, since the substance of those provisions are therein fully stated. Since this is so, what did he intend by the use of the following language: ''I hereby change and revoke so much of said residuary clause of my will as directs the disposition of the share of income of a deceased beneficiary, *and also of the residuum after the death of all said beneficiaries.*'' The italics are ours. Had he omitted the italicized words, the rule that, in construing a will and codicil, a disposition made by the former is not to be disturbed farther than is absolutely necessary to give effect to the latter, would apply; and the provision of the will relating to the disposition of the income would alone be affected. But of equal importance is the rule that requires force and effect to be given to every part of a will, if possible, on the assumption that the testator did not use an unnecessary word, or one to which no proper force can be given.

That the testator intended to revoke the provision in the original will respecting the disposition of the income from the trust estate is, in effect, admitted. That he likewise intended to revoke the provision in the original will relating to the disposition of the trust estate itself is equally clear, if we are to give credence to what he says about it. He says in clear and unmistakable language that he revokes both. By what line of reasoning it can be said that he revoked the one and not the other is not apparent.

It is urged, in opposition to appellant's claim, that the word ''residuum'' as used in the revoking clause of the codicil does

not mean the "residuary estate" of the testator, but means the residuum of the share to which the testator is then referring, *i.e.*, the share of a beneficiary dying during the trust period. This claim is without merit. The only provision in the original will to which it can refer is that respecting the "residue" to be divided among the heirs of the beneficiaries named when all of said beneficiaries shall have deceased. Moreover, it is the "residuum after the death of *all* said beneficiaries." It is apparent that there would then be no "residuum" or "residue" other than the principal of the trust estate itself.

It is true that the testator, "in lieu" of what he revokes, directs how the income from the trust estate shall be disposed of during the life of the beneficiaries named, or the survivor of them, but makes no disposition of the trust estate itself at the death of the survivor. This, of course, leaves the residuary estate as intestate property, which the testator is presumed not to have intended. See cases cited above. But this presumption will not be allowed to defeat the real intention of the testator when that can be ascertained, from the express language of the will or from the entire scheme of disposition thereby disclosed. Partial intestacy is by no means unheard of. *Crossman* v. *Crossman's Estate, supra.* It appears from an agreed statement of facts filed in the probate court that at the time this codicil was executed the testator was contemplating waiving a life provision for him in the will of his deceased wife whereby, if his plans were successful, his estate would be increased approximately $80,000. This may have affected his intention concerning the disposition of the residue of his estate. But be that as it may, the language of the revoking clause of the codicil is too clear and explicit to admit of serious doubt as to its meaning. We hold, therefore, that the provision of the original will disposing of the principal of the trust estate was revoked by the codicil, and, since no other provision was substituted therefor, that as to such estate the testator died intestate.

*Decree of the probate court reversed with costs to the appellants, and cause remanded with directions that a decree be entered in accordance with the views herein expressed. Let the result be certified to that court.*