BERENICE R. TUTTLE ET AL. *v.* WILLIAM S. TUTTLE ET AL.

Special Term at Rutland, November, 1941.

Present: MOULTON, C. J., SHERBURNE, BUTTLES and STURTEVANT, JJ., and CUSHING, SUPR. J.

Opinion filed January 6, 1942.

*Christopher A. Webber* for defendant William S. Tuttle.

*Clayton H. Kinney* and *Lindley S. Squires* for plaintiffs.

SHERBURNE, J. This is a petition for a declaratory judgment asking for a construction of the last will and testament of Egbert C. Tuttle. The parties are his children.

In order to cover the question raised it is necessary to set forth most of the contents of the will. In paragraph 2 the homestead property is devised to the testator's daughter, Berenice, for life, with remainder to his son Riford, and the desire is expressed that it be kept and maintained as a sort of family home, where his children may meet from time to time as circumstances permit. In paragraph 3 Berenice is given the contents of the home. Paragraph 4 reads as follows:

> "FOURTH: In order that my daughter Berenice
> may be able to maintain the homestead as a home,
> much of her time and extra expense will be re-
> quired. With this in view, my executrix or trustee

shall pay all taxes, assessments, insurance premiums and make all necessary ordinary repairs on said homestead property for and during her natural life, and so much of my estate as is necessary for that purpose is bequeathed to her. In addition I give and bequeath to my daughter Berenice the sum of Two Hundred (200) Dollars per month to be paid to her out of my estate by my executrix or trustee for and during her natural life, or so long as she shall remain unmarried. Any net income from rents or otherwise, in case she fails to occupy and use the whole of said premises as herein contemplated, which she shall receive shall be deducted from said monthly allowance. In the event of her marriage, the aforesaid monthly allowance shall wholly cease. Sufficient real estate shall be retained by my executrix or trustee for the carrying out of the provisions of this paragraph. The same may, however, be secured to her by the parties interested on the surrender of the trust hereby created.''

In paragraph 5 the south half of a double tenement house occupied by Charles E. Tuttle and his family is devised to him and his wife and son, with the right to purchase the north half at a price of $6000, or at a price fixed by the appraisers on the estate, within one year. Paragraph 6, so far as material, reads as follows:

''SIXTH: All the rest and residue of my real estate, consisting at present of * * *; also the north one-half of the double house on Main Street hereinbefore mentioned or the proceeds thereof, as the case may be, I do hereby give and devise to my daughter, Berenice R. Tuttle, in trust, for and during the term of five years from and after my decease, to be kept and maintained, rented and rerented and properly cared for by my executrix or trustee, to collect and receive all rents and income therefrom, to pay all taxes, assessments, repairs, insurance and expenses for maintenance thereof,

> together with the Two Hundred (200) Dollars allowed to my daughter, Berenice R., and in addition thereto the allowance for expenses as herein provided. On the 5th day of January annually after my decease, the net income from said real estate, if any, shall be equally divided and paid over to my five children, William S. Tuttle, Charles E. Tuttle, Riford R. Tuttle, Berenice R. Tuttle and Doris Tuttle Braislin, share and share alike.''

In paragraph 7 the residue of the estate is given to Berenice in trust to pay certain specific legacies, including $500 each to five grandchildren. In paragraph 8 his stock of 370 or more shares in the Tuttle Company, Inc. is given to her in trust, with a direction that the dividends thereon be treated the same as the income of his real estate, and distributed in the same way. By paragraph 9 the legacies enumerated in paragraph 7 are directed to be paid out of personal property, if sufficient, ''otherwise they shall be chargeable upon'' real estate. Paragraph 10 reads as follows:

> ''TENTH: At the termination of said trust by the death or marriage of Berenice, or at the expiration of the term of five years after my decease, I give, devise and bequeath to vest as of my decease, all the rest and residue of my estate, both real and personal, not otherwise disposed of by this will, to my five children hereinbefore named, in equal shares, to have and to hold to them, their heirs and assigns respectively forever.''

The will was executed on September 4, 1928, and the testator died on September 26th following, at the age of 79 years. His will was duly proved and allowed, and Berenice was appointed and qualified as executrix. Her final account as such was filed on December 29, 1931, and thereupon the probate court made a final decree. Since that date she has been acting as trustee under the terms of the will and the decree of the probate court.

The property of the estate consisted largely of real estate and stock in the Tuttle Company, and at the time of the testa-

tor's death the income from this property was sufficient to pay the expenses of maintenance and upkeep of the real estate, including taxes, and also to pay Berenice her $200 each month, but due to business conditions the income from the trust estate is now, and for several years last past has been, insufficient to pay these items, and there are unpaid taxes and Berenice has not received all of the $200 per month.

At the time the testator executed his will, his wife had been dead for many years, and since her mother's death his daughter Berenice had acted as his housekeeper and managed the home. The other children, with the exception of Riford, were all married and away from home and at that time well able to support themselves. Riford was employed in his father's business, and at that time well able to support himself. The testator was kind and generous to all his children. He and Berenice were particularly close to each other, were chums and companions for each other. While he had great affection for all his children, he had particular affection for Berenice, and had stated his intention to provide for her.

In his construction of the will the chancellor found as follows:

"I find that it was his (the testator's) intent that Berenice maintain the homestead property devised to her under paragraph second of his will during her natural life and that she devote her time and necessary expense to that end, and that it was also the intent of the testator that his daughter Berenice receive two hundred dollars each month out of his estate during her lifetime or so long as she remained unmarried.

"I find that it was the intent of the testator that the trust mentioned in the sixth paragraph of his will should be maintained by his trustee, Berenice R. Tuttle, for five years after his decease, and that it should then terminate, but that he also intended that his executrix or trustee should retain sufficient of his real estate even after the five year period had ended to carry out the provisions of the fourth paragraph of his will, which was the maintenance and upkeep of his homestead property, in-

cluding all taxes, assessments, insurance premiums and necessary ordinary repairs, and that she be paid two hundred dollars each month during her lifetime or so long as she remained unmarried.

"I find that under present conditions it is necessary for the plaintiff to retain all the real property belonging to the estate to carry out the provisions of the fourth paragraph of the testator's will. Even though that were not necessary, I find it was the testator's intention that the other children secure the plaintiff Berenice Tuttle for the carrying out of the provisions of paragraph four of the testator's will when the trust provided for under paragraph six of the will was terminated at the end of the five year period after the testator's death.

"I find that the testator intended that his daughter Berenice be paid two hundred dollars per month during the remainder of her lifetime or until she married, even though that were done out of the principal of the trust estate, insofar as that became necessary, and that sufficient of the real estate remains in the hands of the trustee to carry out the provisions of the fourth paragraph of the testator's will during the remainder of her lifetime, or until she marries.

"Unless the other children interested in said trust estate are willing and able to secure to the plaintiff Berenice R. Tuttle the payment of two hundred dollars each month during the remainder of her lifetime or until she marry, and to pay the necessary expenses of maintaining and carrying out the trust provided for in the said will and the said probate court decree, I find that the plaintiff as trustee has the right to petition the probate court for the district of Rutland from time to time to be allowed to raise the funds necessary for carrying out the terms of the said trust by mortgage or sale of the trust property."

The exceptions, as briefed, present the sole question as to whether under the terms of the will Berenice is entitled to the $200 per month, provided for by paragraph 4 of the will, out of income only, or whether she is entitled to have it paid out of the corpus of the real estate insofar as the income therefrom is insufficient.

In construing a will the first and chief object is to ascertain the intention of the testator, from the language used, since, so far as it may be legally carried out, that governs. *In re Beach's Estate,* 103 Vt. 70, 76, 77, 151 Atl. 654; *In re Peck's Estate,* 101 Vt. 502, 505, 144 Atl. 689; *Crossman* v. *Crossman's Estate,* 100 Vt. 407, 411, 138 Atl. 730; *In re Will of Mansur,* 98 Vt. 296, 298, 127 Atl. 297. To determine such intention, the court is to take the instrument by its four corners, consider it in all its parts, and give effect to its language read in the light of the relation of the parties concerned and the circumstances attending its execution. *In re Robinson's Will,* 101 Vt. 464, 469, 144 Atl. 457; *In re Carter's Will,* 99 Vt. 480, 487, 134 Atl. 581. Stated differently, the court is to place itself in the shoes of the testator, and his language is to be construed and interpreted in the light afforded by the state of facts with which he was surrounded, and his relations to the various objects of his bounty. *Holmes* v. *Holmes, Admr.,* 36 Vt. 525, 529. See, also, *In re Welch's Will,* 78 Vt. 16, 61 Atl. 145. Force and effect must be given to every part of the will, if possible, since it is not to be presumed that the testator used an unnecessary word, or one to which no proper force can be given. *In re Peck's Estate,* 101 Vt. 502, 506, 144 Atl. 689; *Ripley, Admr.* v. *Benjamin, Admr.,* 111 Vt. 76, 79, 10 Atl. 2d. 205; *Shepard's Heirs* v. *Shepard's Estate,* 60 Vt. 109, 116, 14 Atl. 536. If different provisions of the will apparently conflict, such construction is to be given them as will give effect to all the provisions unless a clear repugnancy exists between the different provisions. *Ripley, Admr.* v. *Benjamin, Admr., supra; McCloskey* v. *Gleason, Admr.,* 56 Vt. 264, 267, 48 Am. Rep. 770.

Although the will does not expressly say that the legacy to Berenice is payable from income only, the defendants contend that the testator's intention as ascertained from the whole will conclusively establishes that fact. Our attention is called to the provisions of paragraph 6, and it is said that far from giving the

trustee authority to sell any real estate to pay the bequest to her, the trustee is directed to keep and maintain the real estate, and after collecting the rents and income to pay certain specified items, including the bequest to her, and it is argued, that having in mind the common practice of giving trustees power to sell if the corpus is to be depleted, this is equivalent to a direct bequest out of income only, and that the language used clearly contemplates the expenses are to be paid from the rents and income. Attention is also called to the provisions of paragraph 8 which leaves the stock in the Tuttle Company in trust, and directs that the dividends shall be treated the same as the income of the real estate and distributed in the same way to the five children, and it is stated that the income of the real estate must again be considered as the means of paying the bequest to Berenice. The probate court, in its final decree, placed all the residue, both of real and personal estate, in one trust account to be administered in accordance with the terms of the will. We think a fair construction of paragraph 8 in connection with paragraph 6 shows the intention that the combined income from the real estate and stock in the Tuttle Company should be used for the purposes of paragraph 6 if necessary. Our conclusions in this regard are supported by what is said in defendants' brief, where they state that, at the time the testator executed his will, his net income was enough to much more than pay the bequest to Berenice, and mention stated amounts of income from the Tuttle Company stock as well as from rents, of which the former were much the greater. But the defendants cannot avail themselves of these figures to show that the testator had a well founded anticipation that his income from real estate alone would be sufficient to carry out the provisions of paragraph 4, as the findings only show that at the time of the testator's death the combined income was sufficient to pay the expenses of the real estate and the bequest to Berenice. We cannot supplement the findings, though the evidence may be before us. *Partridge* v. *Cole,* 98 Vt. 373, 376, 127 Atl. 653. It is unnecessary to determine if there is any conflict between paragraph 4 and paragraph 6 as to resort to the corpus of the real estate, as we can assume in support of the decree that the combined income was sufficient up to September 26, 1933, the end of the five year period It is reasonable to infer, as the chancellor did, that the

testator intended that the other children secure Berenice for the carrying out of the provisions of paragraph 4 at the end of this period. It gave them time to make arrangements.

In view of the provisions of P. L. 2898 and 2909 authorizing the probate court to license a sale or mortgage of a testator's real estate to pay legacies we do not attach great weight to the failure of the will to give such authority. Had such authority been given, it would of course have served to indicate an intent that the bequest should be paid from the corpus of the estate if necessary.

Our attention is called to paragraph 10 and it is argued that by its provisions the intent is shown that the testator's five children should share equally in the corpus, not in what might be left in case a part should need to be used to pay the bequest to Berenice. In this connection, the provision in paragraph 4 that sufficient real estate shall be retained by the executrix or trustee for the carrying out of the provisions of that paragraph, unless secured to her by the parties interested on the surrender of the trust, should be noted. The rest and residue mentioned in paragraph 10 refers to what is left after sufficient real estate has been so retained.

The provision as to vesting at the testator's decease merely indicates with certainty that each of the children shall take a present vested interest in what shall remain at the expiration of the trust, regardless of whether they shall survive until that time. By the use of this term the residuary devisees were assured of having such title, that, in case they should desire to secure to Berenice the benefits of paragraph 4, they could mortgage or otherwise dispose of the real estate in order to do it.

Finally attention is called to paragraph 9, wherein the specific legacies are made chargeable upon real estate ·in case of insufficiency of personal property. It is argued that, because no mention is made here of Berenice, the testator did not intend her bequest to be likewise chargeable, for if he had he would have so stated in this paragraph. This reasoning is difficult to follow. We cannot see in what respect this paragraph conflicts with paragraph 4 further than to make the real estate further chargeable, so as possibly to make some apportionment necessary,

had the personal property been insufficient, which the decree of the probate court shows it was not.

Taking the will as a whole, and interpreting it in the light afforded by the state of facts with which the testator was surrounded, and his relations to the various objects of his bounty, we think that by paragraph 4 he intended that Berenice should have the $200 per month paid out of the corpus of the real estate insofar as the income therefrom should be insufficient, and that the benefits conferred in the residuary clause should be subordinate thereto. The testator made a well rounded will, in which his children and grandchildren were each thoughtfully remembered, but in which his daughter Berenice, the close companion of his declining years, was intended to be his chief beneficiary.

In some respects this case resembles *Boomhower* v. *Babbitt's Admr.*, 67 Vt. 327, 331, 31 Atl. 838, where the testator gave his daughter a yearly payment of $360 during her life, and directed the investment of an amount, which at the legal rate of interest would produce that sum, and provided that the income of the fund should be used in payment of such bequest. In that case the Court said: "The language points to the security and completeness of the yearly payments rather than to the relief of the body of the estate from future contingencies," and held that it was the intention of the testator to give his daughter the full yearly sum, without regard to the fate of the fund appropriated to its payment.

We approve the conclusions of the chancellor hereinbefore mentioned.

*Decree affirmed with costs.*