IN RE SOCRATES BEACH'S ESTATE.

May Term, 1930.

Present: POWERS, C. J., SLACK, and THOMPSON, JJ., and GRAHAM, Supr. J.

Opinion filed October 15, 1930.

*Clarence P. Cowles* and *J. H. Macomber, Jr.*, for the appellants.

*J. Ward Carver* (*John G. Sargent* of counsel), for the appellees.

THOMPSON, J.   Socrates Beach died November 5, 1904. He left surviving him two daughters, Myra B. Powers and Hattie B. Adams, a son, Joseph T. Beach, a grandson, Harold B. Adams, son of Hattie B. Adams, and a grandson, Charles A. Beach, and a granddaughter Emma L. (Beach) Hazelton, children of Joseph T. Beach.

He left a will, executed March 14, 1902, which contained provisions for the life support of his children and their spouses and of his grandchildren, with remainder over in fee to the "lawful issue," or "heirs," of his grandchildren.

He left certain real and personal property in trust for the support of his son Joseph and others, and for certain other purposes, said trust to terminate upon the decease of said Joseph. Included in said trust were certain lands with buildings thereon situated on the east side of Church Street in the city of Burlington, extending northerly from Bank Street, and herein referred to as the Church Street property.

The clauses of the will are not numbered, but we have numbered them consecutively for convenience.   The clauses with which we are particularly concerned pertain to the disposition of the Church Street property after the decease of said Joseph

T. Beach. Said clauses, so far as they are material, are as follows:

Clause 29. "If my son Joseph at his death leaves lawful children hereafter born, surviving him, I give and devise to them in equal shares the use during their lives of the north one-third in value of my Church Street real estate with remainder over in fee to their lawful issue in equal shares forever."

Clause 30. "After the decease of my son Joseph, said trust shall end and all said trust estate then remaining shall be equally divided among my children and grandchildren then living, and the issue of any deceased grandchild per capita."

Clause 38. "If my daughter Myra survives my son Joseph, I give to granddaughter Emma L. Beach (Hazelton), during the life of said Myra one-fifth of the net income of two-thirds in value of my real estate on Church and Bank Streets * * *; and four-fifths of said income to said Charles A. Beach during his life subject to the support of his mother said Cora E.; and at the death of said Myra B. I give said Charles A. during his life the entire income of the said two-thirds in value of said real estate subject to the support of his mother, with remainder over in fee to his lawful issue in equal shares forever * * * subject to the support of Cora E. if the other provisions I have herein made for that purpose are insufficient."

Clause 39. (a) "If my son Joseph at his death leaves no children hereafter born, I direct that the income of the north one-third in value of my said Church Street and Bank Street real estate above described shall be equally shared by said Charles A. and Emma L. Beach during their respective lives and at the death of either of them I give and devise to his or her lawful issue as the case may be an undivided half of said north one-third in value of said Church and Bank Streets real estate, in fee forever. (b) If either of them dies without leaving issue, I give and devise the whole of said real estate to the issue of the other."

Clause 46. "The rest and residue of all my estate not herein otherwise disposed of I give and devise to my children and grandchildren in equal shares to them and their heirs per capita."

Joseph T. Beach died December 8, 1927. No children were born to him after the execution of the will. His wife, Cora E.,

had died. He remarried and was survived by his second wife who is called May Beach. The will provides that she shall have the same support that was provided for Cora E. Prior to the death of said Joseph, said Charles A. Beach died intestate, unmarried, and without issue; also, Hattie B. Adams and her husband, Mark W. Adams, Cornelius Powers, husband of said Myra Powers, and Cora Elizabeth Hazelton, only child of Emma Beach Hazelton, had died.

The testator's children and grandchildren living at the death of said Joseph, and they are now living, are said daughter, Myra B. Powers, said granddaughter, Emma Beach Hazelton, and said grandson, Harold B. Adams. There is no issue of any deceased grandchild.

On November 17, 1928, the probate court, after setting forth the facts, decreed the Church and Bank Streets property as follows:

"The use and income of the north one-third * * * is decreed to Emma L. Hazelton for life, with fee and remainder over to her lawful issue.

"And during the life of Myra B. Powers, one-fifth of the net income of the south two-thirds * * * is decreed to the said Emma L. Hazelton and at the decease of the said Myra, the fee and remainder in said south two-thirds is decreed in equal shares to the lawful issue of the said Emma Hazelton, provided, however, that during the life of Myra B. Powers, four-fifths of the net income of said south two-thirds in value shall be subject to the support of May Beach, the widow of Joseph Beach, and at the death of the said Myra, the whole of the net income of the said south two-thirds shall be subject to the support and maintenance of the said May Beach during her life in accordance with the will of the testator."

The probate court made no decree of the four-fifths of the income of the south two-thirds of the Church Street property devised to Charles A. Beach during the life of Myra, except so much thereof as may be needed to support Joseph's widow, May Beach.

The will contains no specific devise of the income of said south two-thirds devised to said Charles A., nor of the fee thereof, in the event, as happened, of the death of said Charles A. without leaving issue, unless said two-thirds is included in paragraph (b) of clause 39 of the will: "If either of them

(Charles A. or Emma L.) dies without leaving issue, I give and devise the whole of said real estate to the issue of the other.''

The appellees contend that said paragraph (b) applies to, and includes, the whole of the Church Street property, and that the probate court did not err in decreeing the fee and remainder in said south two-thirds to the lawful issue of said Emma Hazelton at the death of said Myra Powers, subject to the support of said May Beach.

The appellants question this part of the decree. They contend that said paragraphs (a) and (b) of clause 39 are to be construed together, and that they were meant to, and do, include the north one-third only of the Church Street property; that, since the testator failed to specifically devise the remainder and fee of said south two-thirds in the event of the death of said Charles A. without leaving lawful issue, the income devised to him and the fee of said south two-thirds fall into the residuary portion of the estate, or is devised by clause 30 to the children and grandchildren of the testator living at the death of said Joseph, as trust estate remaining after Joseph's death.

The appellants also contend that the probate court erred in decreeing the use and income of the whole of the north one-third of the Church Street property to said Emma L. during her life. They claim that clause 39 does not give to the survivor of Charles A. and Emma L. the life use of the whole of said north one-third.

The first question we consider in determining who takes the income and fee of the Church Street property devised to Charles A. Beach and his issue is: Was it the intention of the testator that the issue of Emma Beach Hazelton should take the remainder and fee of the whole of the Church Street property, as decreed by the probate court, in the event that Joseph Beach died without leaving children born after the execution of the will, and that Charles A. Beach died without leaving issue. The decision of this question depends on whether the testator intended that the words ''the whole of said real estate'' in paragraph (b) of clause 39 should include the whole of the Church Street property, or that they should apply to the north one-third only of said property.

It is a cardinal principle that, in construing a will, the first and chief object is to ascertain the intention of the testator, from the language used, since, so far as it may be

legally carried out, that governs. *Crossman* v. *Crossman's Estate,* 100 Vt. 407, 138 Atl. 730; *In re Peck's Estate,* 101 Vt. 502, 505, 144 Atl. 686; *In re Mansur's Will,* 98 Vt. 296, 298, 127 Atl. 297. Such intention is to be ascertained from a consideration of the context of the will and the circumstances attending the making of it. *In re Carter's Will,* 99 Vt. 480, 487, 134 Atl. 581, 61 A. L. R. 1005; *Richardson* v. *Paige,* 54 Vt. 373; *Clark* v. *Peck,* 41 Vt. 145, 152, 98 A. D. 573; *President & Fellows of Middlebury College* v. *Central Power Corp.,* 101 Vt. 325, 340, 143 Atl. 384. And force and effect are to be given to every clause of the will. *Crossman* v. *Crossman's Estate, supra.*

A study of the whole will reveals that the outstanding intent of the testator was to keep his entire estate in his own family as long as possible; that his children and grandchildren should have life estates only; and that the fee of his real estate should pass to the issue of his grandchildren. He made what he considered was an equitable distribution of the income and use of his property and of the fee of his real estate.

All of the real estate is situated in the city of Burlington. The testator made four divisions of his real estate which would eventually pass to his greatgrandchildren if the child or children of his daughter Hattie B. Adams and of his son Joseph Beach died leaving "issue." His daughter Myra had no children, and it is apparent that he expected she would die childless, as he made no provision for any child or grandchild of hers

The four divisions of his real estate are: The Bakery property; the Center Street Corner property, which he carved out of the Bakery property; the St. Paul Street property; and the Church Street property.

By clauses 2, 3, 4, and 5 of the will, a life use of the Bakery property is devised to Hattie B. Adams and to her husband, if he survives her. At their deaths a life use of the property is devised to the surviving child or children of Hattie in equal shares during their respective lives, and, at the death of Hattie and her husband and her said child or children, said property is devised in equal shares to the lawful issue of such child or children in fee forever.

By clauses, 6, 7, and 8, a life use of the St. Paul Street property is devised to Myra Powers. If her husband, Cornelius, survives her, there is devised to him during the remainder of his

life and to Emma Beach Hazelton during her life, each one-half of the use and income of said property, and at the death of said Myra and Cornelius the entire use and income of said property is devised to said Emma during the remainder of her life. After the termination of said life estates, the property is devised at the death of said Emma "to her lawful issue in equal shares forever."

By clauses 9 and 34, Myra Powers is given the use during her life of the Center Street Corner property. If Emma Beach Hazelton survives her, she is given the use and income of said property during her life, "and at Emma's death I give the use of said building and land to said Hattie B. for her life and at her death I give the use thereof for life to her children then over in fee to the heirs of Hattie's children forever"

In clause 33, said Myra is directed to pay from the income of the real estate to which she shall be entitled under the will, fifteen dollars per month to said Emma Beach Hazelton during the life of said Myra, and, if said Emma dies leaving lawful issue in the lifetime of said Myra, said Myra is directed to pay said fifteen dollars monthly to such issue after said Emma dies during the remainder of said Myra's life.

In clause 10 the testator gives, devises, and bequeaths "to my friend Byron S. Jones of said City in trust for the purposes hereinafter mentioned, all my personal estate and my real estate on the east side of Church Street and my homestead premises on the north side of Maple Street in said City, to have the possession, control and management thereof during the life of my son, Joseph T. Beach, with full power to do all things necessary in the care of my estate and the renting of the real estate to enable him to derive a reasonable income therefrom."

Other clauses of the will contain instructions to the trustee for the administration of the trust, which includes the sale of the homestead premises, but it is not necessary to mention these further than to say that the main purpose of the trust was the support of Joseph Beach and his family during his life, and that the trustee, in performing his duties, used all the trust property except the Church Street property, and he used a portion of that.

The testator's disposition of the Church Street property is contained in clauses 29, 38, and 39 of the will hereinbefore quoted.

In the disposition of the Church Street property after the termination of the trust, the testator divides it physically in value; the north one-third in value and the south two-thirds in value; and he treats each part separately in disposing of it. Said south two-thirds is bounded by the testator as follows (Clause 38) : ''bounded south by the north line of Bank Street, west by the east line of Church Street, and north by a line parallel with Bank Street and far enough north therefrom to include two-thirds in value of my said Church and Bank Streets property.''

The appellees say that the Church Street property itself was not a part of the trust estate, and that the trustee did not have any interest in it beyond the management and the rents and incomes therefrom during the continuance of the trust. We cannot agree with this claim. The language of clause 10, which creates the trust, is similar to that used by the testator in *Russell* v. *Russell*, 109 Conn. 187, 145 Atl. 648, 655, 63 A. L. R. 783. In that case the testator gave real estate to trustees ''to hold, manage, and care for,'' etc., until his youngest surviving child should reach the age of twenty-one. One of the questions propounded to the court was: ''What is the meaning of the words 'hold, manage, and care for?' '' In reply, the court said: ''The words 'hold, manage, and care for' the property of the trust mean that the trustees are to hold the legal title to the property and administer it with the same powers and subject to the same limitations as ordinarily pertain to trustees.'' We hold that the words ''to have the possession, control and management thereof'' in clause 10 have the same meaning, and that that clause gave the legal title to the Church Street property to the trustee during the life of the trust, and made that property, a part of the trust estate. *Barnes* v. *Dow*, 59 Vt. 530, 542, 10 Atl. 258; *Weatherhead* v. *Stoddard*, 58 Vt. 623, 628, 5 Atl. 517, 56 A. R. 573.

It is clear that it was the intention of the testator that Emma Beach Hazelton or her issue should take no interest in the south two-thirds of the Church Street property on the termination of the trust if Myra Powers died before Joseph Beach died and if Charles A. Beach died leaving issue. The only direct, specific devise of any interest in said property to said Emma is one-fifth of the net income during the life of Myra contingent on Myra surviving said Joseph. There is no

direct, specific devise of any interest in said property to Emma's issue. The reason for this limited devise is apparent when we refer to clauses 6, 7, 8, 9, and 34, which, on the death of Myra, give to Emma the use and income of the Center Street Corner property during her life, one-half of the use and income of the St. Paul Street property during the life of Myra's husband if he survives her, and, on his death, the use and income of all the St. Paul Street property during her life, and, at her death, the fee of the St. Paul Street property to her lawful issue.

The direct, specific devises of the south two-thirds of the Church Street property are contained in clause 38.

■ If Joseph Beach died survived by lawful children born after the execution of the will, clause 29 gave and devised to them the use during their lives of the north one-third of the Church Street property, with remainder over in fee to their lawful issue.

If, as happened, no such children survived him, clause 39 provides that the use of said north one-third shall be equally shared by Charles A. Beach and Emma Beach Hazelton during their respective lives, and at the death of either an undivided half of said north one-third is devised to his or her lawful issue in fee forever. If either of them dies without leaving issue, "the whole of said real estate" is devised "to the issue of the other."

In view of the facts that the testator made a physical division of his Church Street property into the north one-third and the south two-thirds; that in disposing of the same he treated them as two separate parcels of real estate; and that it was his evident intent that, after the death of Myra Powers, Emma Beach Hazelton should have the life use of the Center Street Corner property and the St. Paul Street property with fee of the latter property to her issue at her death, in lieu of any interest or estate, in the south two-thirds of the Church Street property, we think, and we so hold, that the words "the whole of said real estate" refer only to the real estate described in paragraph (a) of clause 39, viz., the north one-third of the Church Street property, and not to the whole of said property.

■ The appellees say that Cora Elizabeth Hazelton, daughter of Emma Beach Hazelton, took a vested interest in the Church Street property subject to the life interests in the same created by the will, possession to be had at the termination

of those estates by the decease of the life tenants. But this is not so. Whatever estate, if any, she took in said property was a contingent estate. Cora Elizabeth died before Joseph Beach died. The appellees say that she survived Charles A. Beach. That fact does not appear in the record, and we think it is immaterial for the disposition of the case.

It is only by virtue of the words "the whole of said real estate" in clause 39 that the appellees claim that Cora Elizabeth took an interest in the south two-thirds of the Church Street property.

It is true, as stated by the appellees, that the law favors the early vesting of devised estates; that the law presumes that words of survivorship relate to the death of the testator, if fairly capable of such construction; and that no estate will be held contingent unless positive terms are employed in the will indicating such intention. *In re Robinson's Estate,* 90 Vt. 328, 332, 98 Atl. 826; *In re Mansur's Will, supra; In re Thayer's Estate,* 99 Vt. 204, 206, 130 Atl. 683; *In re Henry's Will,* 99 Vt. 437, 441, 134 Atl. 632, 49 A. L. R. 169; *In re Carter's Will,* 99 Vt. 480, 485, 134 Atl. 581, 61 A. L. R. 1005; *In re Field's Estate,* 101 Vt. 242, 249, 143 Atl. 280. But when the language employed by the testator annexes futurity to the substance of the devise which clearly indicates the intention of the testator to limit it to take effect upon a dubious and uncertain event, the interest is contingent. *In re Irish's Will,* 89 Vt. 56, 94 Atl. 173, Ann. Cas. 1917C, 1154; *In re Thayer's Estate, supra; In re Henry's Will, supra; In re Field's Estate, supra.* In such case the vesting of the devise is suspended until the time of the happening of the event. *In re Irish's Will, supra; In re Henry's Will, supra.* And, if the devisee dies before the time, it is a lapsed devise. *In re Mansur's Will, supra.*

By clauses 29 and 39 the vesting of any interest in Emma Beach Hazelton and her issue in the north one-third of the Church Street property depended on Joseph Beach dying without being survived by children born after the execution of the will. No such children survived him, and, so far as appears from the record, he had no "children hereafter born." But the event was dubious and uncertain, as the event could not be ascertained until he died, because the possibility of his being survived by such children was not precluded until his death. *In re Wells' Estate,* 69 Vt. 388, 393, 38 Atl. 83. Since Cora

Elizabeth died before the death of Joseph Beach, the devise, so far as she was concerned, lapsed, and she took no vested interest in any of the Church Street property during her lifetime.

Does Emma Beach Hazelton take the whole of the income of the north one-third of the Church Street property during her life?

While clause 39 directs that such income shall be equally shared by said Charles A. Beach and said Emma during their respective lives, it does not provide that the survivor shall have the whole of the income if either dies without issue, nor does the will make any specific disposition of the share of the deceased. If either dies leaving issue the fee in an undivided half of said north one-third is devised to such issue; and, ''If either of them dies without leaving issue, I give and devise the whole of said real estate to the issue of the other.''

A literal construction of the paragraph just quoted would, on the death of one without leaving issue, immediately vest the present possession of the fee in the whole north one-third in the issue of the survivor; but we do not think this was the intention of the testator. It appears clearly from the will that it was the intention of the testator that, on the death of his children, his grandchildren should have the use and income of different parcels of real estate during their lives with remainder in fee to their issue; and, except in this instance, no real estate is devised to his greatgrandchildren except that in which their parent is devised a life interest. A construction which permits greatgrandchildren to displace a living parent is to be avoided unless such is plainly the intention of the testator. *Manning* v. *Manning,* 229 Mass. 527, 118 N. E. 676; *Daskam* v. *Lockwood,* 103 Conn. 54, 130 Atl. 92. We think such an intention is not shown by the will, and we hold that, while the remainder in fee in said north one-third vests in Emma's issue born after the death of Joseph Beach, if any, the enjoyment of the same is postponed until her death. But the probate court erred in decreeing the whole of the income of the north one-third to Emma during her life. There is no specific devise to her of the one-half of said income devised to Charles A. in the event of his death without leaving issue, nor can it be fairly inferred from the language of the will that it was the testator's intent that she should take such one-half of the income on the happening of such event. On the death of Joseph Beach said

one-half of the income of the north one-third was a part of "said trust estate then remaining," and should have been decreed to the children and grandchildren of the testator then living, during the life of said Emma, as provided by clause 30 of the will.

Since Charles A. Beach died unmarried and without leaving issue before the death of Joseph Beach, the question arises as to who takes the south two-thirds of the Church Street property under the will. It appears clearly from the will that it was the intention of the testator that no interest in the trust property should vest in his grandchildren and their issue during the life of the trust.

Clause 30 provides that said trust shall end after the decease of Joseph Beach, "and all said trust estate then remaining shall be equally divided among my children and grandchildren then living, and the issue of any deceased grandchild per capita." There is a provision in said clause that, if in the judgment of the trustee any beneficiary under the will is unfit or incompetent to have possession and control of a share in said remaining trust estate, such share shall pass to the executor and be held by him for the use and benefit of such beneficiary with remainder to the issue of such beneficiary forever. This clause disposes of said south two-thirds if there is no other disposition of the same by the will.

By clause 38, on the termination of the trust, the entire income of said two-thirds is devised to said Charles A. during his life with remainder over in fee to his lawful issue, subject to the life support of Joseph's widow and the devise of one-fifth of said income to Emma Beach Hazelton during the life of Myra Powers. On the death of said Charles A., unmarried and without leaving issue, during the life of the trust, the devise to him and his issue lapsed. It follows that on the termination of the trust said two-thirds of the Church Street property was a part of said "trust estate then remaining," and vested in equal shares in Myra Powers, Emma Beach Hazelton, and Harold B. Adams, they being the only members then living of the class designated by the will to take such remaining trust estate.

The probate court should have decreed said south two-thirds, to said Myra Powers, Emma Beach Hazelton, and Harold B. Adams per capita, subject to the devise of one-fifth

of the net income of the same to said Emma during the life of said Myra, to the support of said May Beach during her life, and to the provision of clause 30 as to the exercise of the judgment of the trustee of the unfitness or incompetency of any of said beneficiaries to have the possession and control of his or her share in said remaining trust estate.

Both parties have briefed the question as to what persons are meant by the word "issue" as used in the will, and have cited decisions from other jurisdictions defining the word. For many years preceding the making of the will the statute was, and now is, that the word "issue," as applied to the descent of estates, shall include the lawful lineal descendants of the ancestor. G. L. 11. In the absence of words in the will showing that the testator used the word "issue" in a sense different from that indicated in the statute, he is presumed to have used it in that sense. *In re Smith's Will*, 95 Vt. 97, 102, 112 Atl. 897.

The appellants say that the probate court erred in not specifying in its decree whether the issue of Emma Beach Hazelton take a vested or contingent remainder in the north one-third of the Church Street property.

This question is not properly before us, and we do not consider it, because it does not arise until at least the time for the distribution of the fee of said north one-third arrives.

We call special attention at this time to the irregular procedure adopted by the probate court in this case of decreeing the distribution of the principal of the estate before the time of distribution has arrived. When a limited estate or interest precedes and determines the time of the distribution of the principal, a decree of the limited estate or interest to the person entitled to the same is proper, but the decree should not go beyond that.

In the instant case, by the terms of the will the time has not arrived when the probate court can determine in whom the fee of the north one-third vests. That time will not arrive until the death of Emma Beach Hazelton. If then issue have been born to her since the death of Joseph Beach, the fee will be ascertained to be vested in such issue. If no such issue have been born to her at the time of her death, it will be for the probate court then to determine in whom the fee vests, and to decree it accordingly. *In re Wells' Estate*, 69 Vt. 388, 393, 38

Atl. 83; *In re Peck's Estate,* 96 Vt. 183, 189, 118 Atl. 527; *Morse* v. *Lyman,* 64 Vt. 167, 24 Atl. 763.

*Decree of the probate court reversed, and cause remanded for further proceedings and decree not inconsistent with the views herein expressed. Neither party to recover costs in this Court. To be certified to the probate court.*

NOTE.—When this case was first argued, at the May Term, 1929, it was assigned to MR. JUSTICE WILLCOX. At the May Term, 1930, it was ordered for reargument, and reassigned to MR. JUSTICE THOMPSON.