HENRY H. HOYT, ET ALS., EXECUTORS, ETC., PLAINTIFFS–
 RESPONDENTS, v. BRENT GOOD ORCUTT, ET ALS., DE-
 FENDANTS–RESPONDENTS, AND HENRY H. HOYT, JR.,
 ET ALS., DEFENDANTS–APPELLANTS.

Argued January 24, 1949—Decided February 21, 1949.

*Mr. Ralph E. Lum* argued the cause for appellants Henry H. Hoyt, Jr., et als. *(Messrs. Lum, Fairlie & Foster,* attorneys; *Mr. Albert R. Jube* on the brief*)*.

*Mr. Charles A. Foehl, Jr.,* argued the cause for respondents Brent Good Orcutt, et als. *(Messrs. Young, Shanley, Foehl & Fisher,* attorneys*)*.

The opinion of the court was delivered by

VANDERBILT, C. J. This is an appeal by the defendants Henry H. Hoyt, Jr., Charles O. Hoyt and Suzanne K. Hoyt from a decree of the former Court of Chancery on a bill for the construction of the will of Brent Good, deceased.

The testator died in 1915, leaving as his survivors his second wife, Frances C. Good, a son, Harold F. Good, a daughter, Kate Good Orcutt, and two grandchildren, Brent Good Orcutt and Anna Clark Orcutt (now Anna Orcutt Hoyt), the children of Kate Orcutt. Both of the grandchildren have since married and one, Anna Orcutt Hoyt, has three children, who were born in 1927, 1929 and 1934, respectively.

After certain bequests of household furnishings and personal effects, the testator devised and bequeathed the entire residue of his estate to his executors in trust and directed that at the

expiration of fifteen months after his death the entire residuary personal estate be divided into three equal shares. One share was set apart to provide an annuity of $10,000 for his widow for life, and another share to provide an annuity of $5,000 for his son, Harry Good, for life, the excess of the income in each instance to be paid to testator's daughter, Kate, during the respective lives of the annuitants. Upon the death of each annuitant, the corpus of his or her share was to be paid over to Kate, if she survived, in the event Kate did not survive each annuitant, the excess income was directed to be paid to "the surviving issue of my said daughter" during the lives of the annuitants, and upon the death of each annuitant the corpus likewise was to be transferred to "the surviving issue of my said daughter." The third share was set apart to pay the entire income thereof to Kate for life, with remainder over upon her death to "the surviving issue of my said daughter."

Both of the annuitants predeceased Kate and the corpus of the two shares set up for their benefit was duly paid to Kate. The third share continued in trust for the benefit of Kate until her death in March, 1947, and it is the distribution of the corpus thereof, which consists of approximately one million dollars, that is the subject of the present controversy. In addition to the personalty, there is a one-third interest in certain New Jersey real estate owned by testator at the time of his death, which was held by the court below to pass as part of the corpus of the trust. The testator also had real estate situated in New York and Colorado but the Vice Chancellor declined to pass on its disposition for the reason that this was a matter governed by the law of the respective states in which the property is located. No appeal has been taken from either of these determinations.

Kate was survived by her two children, Brent Orcutt and Anna Orcutt Hoyt, and three grandchildren, the children of Anna, who are the appellants here. The present bill was filed by the executors and trustees primarily to determine whether or not the corpus should be distributed *per stirpes* (one-half to each of Kate's children, excluding the grandchildren) or *per capita* (one-fifth to each of Kate's children and grandchildren).

The court below, after setting forth the basic rule that, unless a contrary intention appears from the will, the word "issue" includes grandchildren as well as children and the distribution is *per capita* and not *per stirpes* found that the testator here intended a stirpital distribution and directed that the corpus be distributed one-half to each of Kate's two children, to the exclusion of her grandchildren. This finding was based upon three grounds: (1) at the time of the execution of the will, the natural objects of testator's bounty consisted of his wife, his son, his daughter, and his two grandchildren; "It seems reasonable to conclude that he was then thinking primarily of his two grandchildren then living with whom he was, according to the evidence, in close contact"; (2) the provisions of the will indicate "that in determining the needs of the members of his family he considered each of them individually;" and since testator limited "the persons who were to share in his estate after providing for his wife, son and daughter to 'the surviving issue of my said daughter', in so doing * * * he must have had in mind his daughter's two children who were then the only members of the family living at the time he made his will"; and (3) the testator's use of the word "surviving" in qualifying the gift to the issue of his daughter was also a significant indication of his intent to limit the takers to his two grandchildren.

With these conclusions we cannot agree. The only controlling intention perceptible from the terms and provisions of the will is a design to prefer the daughter Kate and her family over the testator's son. Apart from this, no controlling intent is revealed. Thus, the question of the construction of the particular phrase "the surviving issue of my said daughter," persistently repeated as to each of the three shares of the estate is left to be determined by applying the natural and normal meaning of the words therein contained. The testator's two grandchildren, of course, would be among the natural objects of his bounty, since they were both at the time of the execution of his will and at the time of his death his only living grandchildren. But the fact that the two grandchildren were alive at the time of the making of the will and at the time of the testator's death is no indication that he did not intend also to include his great

grandchildren, who were not yet born, as objects of his bounty, particularly where, as here, it would have been quite simple to have accomplished any such objective of restricting the remainder by substituting the word "children" for the word "issue."

Nor does it seem that the gift over by the testator to the "surviving" issue has the significance accorded to it by the court below. The case of *Pierson v. Jones*, 108 *N. J. Eq.* 453 *(Ch.* 1931*)*, aff'd 111 *N. J. Eq.* 357 *(E. & A.* 1932*)*, relied on below in support of this conclusion, involved a will in which there were contained other expressions which, standing alone, clearly indicated that the distribution was to be *per stirpes* and not *per capita*. There is nothing in the will here construed, however, from which it can be inferred that the testator intended a distribution contrary to the natural effect of the words used, which it is conceded have a well defined meaning in our law, *Dennis v. Dennis*, 86 *N. J. Eq.* 423 *(E. & A.* 1916*); In re Fisler*, 133 *N. J. Eq.* 421 *(E. & A.* 1943*); Inglis v. McCook*, 68 *N. J. Eq.* 27 *(Ch.* 1904*); Security Trust Co. v. Lovett*, 78 *N. J. Eq.* 445 *(Ch.* 1911*); Lawrence v. Westfield Trust Co.*, Superior Court, Chancery Division, 1 N. J. Super. 423 (1948).

Those portions of the decree from which this appeal was taken are accordingly reversed, and the cause is remanded to the Superior Court with directions to enter a judgment in conformity with this opinion.

*For reversal:* Chief Justice VANDERBILT and Justices CASE, HEHER, BURLING and ACKERSON—5.

*For affirmance:* None.