### *In re* HORRIE ESTATE.

### APPEAL OF SLYKHOUSE.

WILLS—INCOME FROM TESTAMENTARY TRUST—CONSTRUCTION OF SUR-
VIVING ISSUE OF PRIMARY BENEFICIARIES.

> Provision of bequest of income from testamentary trust to the
> *surviving issue* of the primary beneficiaries is construed so
> as to distribute the income, not per capita so that children
> and grandchildren would take in equal shares, but per stirpes
> so as to omit grandchildren whose parents are living, the
> per stirpital construction being more nearly in conformity
> to the general rule of inheritance and because it seems un-
> likely that a testator would, in the absence of clear statement
> to the contrary, intend a result by which descendants would
> share equally without regard to remoteness in degree of kin-
> ship, by which children would participate simultaneously and
> equally with their parents and by which the share of benefici-
> aries in one family branch would be determined by the number
> of beneficiaries in all other branches of the family regardless
> of degree of kinship with ancestor whose issue they are (CL
> 1948, § 702.80; CLS 1956, § 702.93).

Appeal from Kent; Searl (Fred N.), J. Submitted
October 5, 1961. (Docket No. 22, Calendar No.
48,943.)   Decided March 15, 1962.

In the matter of the estate of Mary M. Horrie, de-
ceased, the trustee filed petition for construction of
will in respect to distribution of trust income. Order
of probate court reversed in circuit court where or-
der entered directing distribution to heirs per
stirpes.   Guardian *ad litem* appeals.   Affirmed.

---

REFERENCES FOR POINTS IN HEADNOTES
57 Am Jur, Wills § 1396.

*George J. Slykhouse,* guardian *ad litem* for children of living parents and for unknown and unborn issue, appellant.

*Clifford J. Murphy,* for one of secondary beneficiaries, Wallace D. Driver, appellee.

*Amicus curiae:*

*McShane & Bowie* (*T. Gerald McShane*), for other secondary beneficiaries, for per stirpital distribution.

SOURIS, J. The issue presented for our decision is the meaning of a bequest over to the "surviving issue" of primary beneficiaries. Although an ancient problem in other jurisdictions, it is presented to us as a matter of first impression in Michigan.

Mary Horrie died in 1930, leaving surviving neither a husband nor children. Three brothers and 1 sister did survive. By will, 1 brother was bequeathed only income from a $10,000 trust and the other 2 brothers and a sister were bequeathed outright real and personal property valued at $61,000 to each. The residue of the estate, approximately $450,000, was left in trust. Income therefrom was to be paid in equal shares to the testatrix's sister and her 2 favored brothers or, upon the death of either brother, to his surviving wife, if any. Upon the death of the sister or a brother leaving no surviving wife, or upon the death of a brother's surviving wife, the share of trust income theretofore paid to her or to them was to be paid to "their surviving issue." Paragraph 7 of the will contains the disputed provisions in subparagraph (b):

"I give, devise and bequeath all of the rest and remainder of my estate, wherever situated and whether real, personal or mixed, and whether now

owned by me or hereafter acquired, including any lapsed legacies, to the trustee hereinafter designated by me, and to its successors in trust, the same to constitute a trust fund or estate, subject to the following terms, directions and conditions:

"(a) This trust shall continue during the lives of Alice A. Gondeck, Edwin F. Driver and his wife,. Josephine Driver, and Walter F. Driver and his wife,. Grace D. Driver, respectively, and during the life of the survivor of them, and shall terminate at the death of the last survivor of them.

"(b) During the continuance of said trust, the net income arising from the trust estate shall be disposed of as follows:

"The same shall be payable in equal shares to Alice A. Gondeck, Edwin F. Driver and Walter F. Driver, or the survivor or survivors of them, provided, however, that in case of the death of Alice A. Gondeck, her share shall be then payable to her surviving issue, if any; and in case of the death of Edwin F. Driver, his share shall then or thereafter be payable to his wife, Josephine Driver, during her life, if she survives him, but if she shall not survive him and in any event after her death, his share of said income shall be paid to their surviving issue; and in case of the death of said Walter F. Driver,. his share shall then be payable to his wife, Grace D. Driver, during her life if she survives him, but if she should not survive him and in any event after her death, his share of said income shall be paid to their surviving issue.

"(c) At the termination of said trust $5,000 of the trust estate shall go and belong to Butterworth Hospital, Grand Rapids, Michigan, and the entire remainder thereof shall go and be distributed to the following persons, to whom I then give, devise and bequeath the same, to them and to their heirs and assigns forever, viz.:

"To the then surviving issue of my said sister and my said 2 brothers mentioned in this section or paragraph of my will, the said issue in each case to take

per stirpes and not per capita, and if any of said 3 shall not then have surviving issue, then his or her share shall go to the surviving issue of the other or others of said 3, to-wit: my said sister and my said 2 brothers."

The dispute before the Court involves the share of trust income which was paid to testatrix's brother Walter and to his widow, both now having died. They left 2 sons, Kenneth and Wallace, who still survive, and 2 grandchildren, a son and daughter of Kenneth. The probate court construed subparagraph (b) of the will so as to require payment of Walter's share of the trust income to his 2 surviving sons and his 2 surviving grandchildren in 4 equal parts. In other words, the probate court construed the words "their surviving issue" to require distribution of Walter's share of trust income on a per capita basis to all his lineal descendants, thereby resulting in Walter's grandchilden sharing equally with their father, Kenneth, and their uncle Wallace and in Kenneth's branch of the family receiving 3/4 of Walter's share of trust income while Wallace received the balance.

Upon Wallace's appeal to the circuit court, Kent County Circuit Judge Fred N. Searl construed subparagraph (b) so as to require payment of Walter's share of the trust income in equal shares to his 2 sons, Kenneth and Wallace, to the exclusion of Kenneth's 2 children during Kenneth's lifetime. Judge Searl, in effect, construed the words "their surviving issue" to require distribution of the whole income equally only to lineal descendants in the nearest degree of kindred to the common ancestor and all others to take only by right of representation. The effect of Judge Searl's ruling, supported by a careful and thoughtful opinion, is to exclude Kenneth's 2 children and any unborn or unknown issue of Kenneth or Wallace from sharing in the trust in-

come during the respective lifetimes of Kenneth
and of Wallace.   The guardian *ad litem* of the ex-
cluded issue has appealed to this Court contending
that "their surviving issue", as used in Mrs. Horrie's
will, means all lineal descendants of whatever degree
of kindred and requires distribution to all on a
per capita basis.

Our examination of the decisions of other courts
which have considered this problem, or analogous
problems, reveals that a primary source of the dif-
ficulty encountered results from an apparent re-
luctance to defer the beneficial enjoyment of a be-
quest to a beneficiary who falls within the definition
of issue.   Once the conclusion was reached that issue
includes all lawful lineal descendants, some courts
seemingly believed they were compelled to hold that
all must, therefore, take per capita as soon as the
bequest takes effect.   *Freeman* v. *Parsley,* 3 Ves Jr
421 (30 Eng Rep 1085) ;* *Inglis* v. *McCook,* 68 NJ
Eq 27 (59 A 630, 635, 636); *Lawrence* v. *Westfield
Trust Co.,* 1 NJ Super 423 (61 A2d 899, 902, 903);
*Stickel* v. *Douglass,* 7 NJ 274 (81 A2d 362).   The re-
sulting inequities (children taking shares simultane-
ous with and equal to the shares taken by their par-
ents and family groups in equal degree of kindred
to the testator or other common ancestor taking
vastly varying shares depending only upon the

* The English rule is explained by Page as a choice of the lesser
of 2 evils because, at the time of *Freeman* v. *Parsley* (1797), "the
share of a member of a class, who died before testator, passed to
the other members of the class, and not to his heirs or legal repre-
sentatives. The courts felt that they had no choice between per-
mitting granchildren to share equally with their parents and ex-
cluding them entirely, although they conceded that testator prob-
ably intended grandchildren whose parents were dead to take their
parents' shares, and grandchildren whose parents were alive, to take
nothing. Being unable to give effect to testator's entire intention
they preferred not to disinherit the grandchildren whose parents had
died before testator, even at the expense of permitting the other
grandchildren to take equally with their living parents."   3 Page on
Wills (3d, Lifetime ed), § 1079, p 282; 4 Page on Wills (Bowe-
Parker ed), § 36.15, p 570.

number of issue in each group) compelled some courts to qualify their general rule to the extent that a contrary testamentary intent could be discerned from the will, even a "very faint glimpse of a contrary intention" sufficing for some. *In re Farmers' Loan & Trust Co.,* 213 NY 168, 174 (107 NE 340, 2 ALR 910). See, also, *Lawrence* v. *Westfield Trust Co., supra.*

Other courts, now constituting a majority of those which have considered the problem, we are told (37 Mich L Rev 630, 633; 13 ALR2d 1023, 1047–1052, and 1062–1065), have held that bequests to issue include all lineal descendants but that distribution is to be made "per stirpes" rather than "per capita". *Dexter* v. *Inches,* 147 Mass 324 (17 NE 551); *In re Farmers' Loan & Trust Co., supra; In re Beach's Estate,* 103 Vt 70 (151 A 654, 659, 660); *In re Mayhew's Estate,* 307 Pa 84 (160 A 724, 726, 727, 83 ALR 149).

Finally, still other courts have followed what now is the rule set forth in 3 Restatement, Property, § 303(1):

"(1) When a conveyance creates a class gift by a limitation in favor of a group described as the 'issue of B', or as the 'descendants of B', and the membership in such class has been ascertained in accordance with the rules stated in §§ 292 and 294–299, then, unless a contrary intent of the conveyor is found from additional language or circumstances, distribution is made to such members of the class as would take, and in such shares as they would receive, under the applicable law of intestate succession if B had died intestate on the date of the final ascertainment of the membership in the class, owning the subject matter of the class gift."

An illuminating discussion of the historical development of the law on this subject, as reflected by the opinions in the cases above cited, and of the several

rules followed currently in American courts, may be found in comments (a) and (c) on the foregoing rule by the authors of the Restatement. A helpful analysis of the situation may also be found in 2 Simes and Smith, Future Interests (2d ed), §§ 745 and 746.

The meaning of a bequest to the surviving issue of a primary beneficiary (where such surviving issue consist of 2 sons and the children of 1 of such sons) being a matter of first impression before us, we choose to follow the Restatement not only because we favor "that construction of a will which will make a distribution as nearly conform to the general rule of inheritance as the language will permit", *Rivenett* v. *Bourquin,* 53 Mich 10, 14 (see, also, *Eyer* v. *Beck,* 70 Mich 179, 182, 183; *Van Gallow* v. *Brandt,* 168 Mich 642, 649; *Gardner* v. *City National Bank & Trust Co.,* 267 Mich 270, 279; and *In re East's Estate,* 325 Mich 352, 361), but also because it seems profoundly unlikely to us that a testator would, in the absence of clear statement to the contrary, intend a result by which (1) descendants would share his bounty equally without regard to remoteness in degree of kinship, (2) children would participate simultaneously and equally with their parents, and (3) the share of beneficiaries in 1 family branch would be determined by the number of beneficiaries in all other branches of the family regardless of the degree of kinship with the ancestor whose issue they are. Our laws of descent and distribution require that persons in the same degree of kindred to the common ancestor take equally, otherwise they take by right of representation. CL 1948, § 702.80, and CLS 1956, § 702.93 (Stat Ann 1943 Rev § 27.3178[150] and Stat Ann 1959 Cum Supp § 27.3178[163]).

That Mrs. Horrie intended income from the residue of her estate to be so distributed is scarcely open to question, in our view, for she expressly provided for distribution of the corpus of the residue

of her estate in such fashion by paragraph 7(c) of her will, quoted above. It is hardly likely that she would have intended income to be paid for any period to descendants who would not share in the distribution of corpus without positively expressing such intention.

Affirmed. Costs to appellee.

DETHMERS, C. J., and CARR, KELLY, BLACK, and KAVANAGH, JJ., concurred.

OTIS M. SMITH and ADAMS, JJ., took no part in the decision of this case.