JAMES C. WARREN, JR., ET AL. *v.* THE FIRST NEW HAVEN NATIONAL BANK, TRUSTEE (ESTATE OF ESTELLE C. WARREN), ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued October 3—decided November 20, 1962

*John W. Barclay,* with whom, on the brief, was *William M. Mack,* for the appellants (plaintiffs).

*Stanley Daggett,* guardian ad litem, and *Lawrence R. O'Brien,* for the appellees (defendants Steven Caccavo et al.).

ALCORN, J. On April 7, 1937, Estelle C. Warren of New Haven made her will, in which, following two nonresiduary bequests not now material, she created a trust of the residue of her estate from which her son, James C. Warren, was to receive the income

for life. She then made the provision which is in issue on this appeal: "FIFTH:—Upon the death of my said son, James Carey Warren, or in case he predeceases me, then I give, devise and bequeath to the lawful issue of my said son and of my deceased daughter, Martha Warren Osborne, share and share alike, the principal of said trust fund, with any accumulations of interest thereon." A codicil to the will is not of significance on the question before us. When the will was made, there were living, in addition to the son of the testatrix, three children of the son and two children of the deceased daughter. Mrs. Warren died on April 3, 1944. Her son, the life beneficiary of the trust, died on July 6, 1959. Between the date of the testatrix' death in 1944 and the date of her son's death in 1959, fourteen great-grandchildren of the testatrix were born. Ten of them were children of her deceased daughter's children and four of them were children of her son's children. Following the death of the testatrix' son, the trustee under the will filed an account and requested an order of distribution of the remainder of the trust under the fifth paragraph. The Probate Court ordered distribution per capita among the five grandchildren and the fourteen great-grandchildren of the testatrix. The practical effect of the order is that her daughter's issue would share twelve parts of the trust residue, while her son's issue would share seven parts. Four of the grandchildren appealed from the Probate Court's order to the Superior Court, which sustained the order of distribution. From that judgment this appeal is taken.

The only question presented is the meaning of the words "the lawful issue of my said son and of my deceased daughter . . . , share and share alike,"

which appear in the fifth paragraph of the will. The intent of the testatrix is to be gathered from the language of her will, examined in the light of the circumstances in existence at the time of its execution. *South Norwalk Trust Co.* v. *White,* 146 Conn. 391, 395, 152 A.2d 319; *Hartford National Bank & Trust Co.* v. *Devitt,* 145 Conn. 384, 388, 143 A.2d 441. We may not speculate as to what she may have meant to say but must give effect to what she did say. *Smith* v. *Foord,* 143 Conn. 550, 556, 124 A.2d 224; *Chase National Bank* v. *Guthrie,* 139 Conn. 178, 182, 90 A.2d 643. In her will, the words "lawful issue . . . , share and share alike," are not qualified, explained or modified by any context. Consequently, the words must be given the construction which, under those circumstances, the law accords them. Are the words to be construed, as the judgment appealed from has construed them, so that her descendants of every degree of kinship will share equally in her bounty, children will share equally and simultaneously with their living parents, and the size of the share of each recipient in one branch of her family will be made to depend on the number of beneficiaries in all branches of her family regardless of the degree of their relationship?

The words "lawful issue," as used by the testatrix, must be construed as words of purchase. As such, their primary and presumptive meaning is heirs of the body; descendants of every degree are included. *Smith* v. *Foord,* supra, 557, and cases cited; *Stamford Trust Co.* v. *Lockwood,* 98 Conn. 337, 344, 119 A. 218. The English courts, confronted with a gift to "issue" which meant a gift to descendants of every degree, adopted the rule that such a gift required a per capita distribution to all lineal descendants. The order of distribution appealed

from applies this rule, found in cases such as *Freeman* v. *Parsley*, 3 Ves. Jr. 421, 423, 30 Eng. Rep. 1085. It is suggested that the rule evolved because that case was decided at a time when the share of a member of a class who predeceased the testator passed to the other members of the class rather than to the member's heirs or legal representatives. 4 Page, Wills § 36.15 (Bowe-Parker Rev. 1961). The court made clear the fact that it reluctantly reached a result which probably frustrated the testator's real intention: "In the common use of language as well as the application of the word 'issue' in wills and settlements it means all indefinitely. I very strongly suspect, that in applying that to this will I am not acting according to the intention: but I do not know, what enables me to control it. If a medium could be found between a total exclusion of the grandchildren, and the admission of them to share with the parents, the nearest objects of the testator, that would be nearer the intention; as by letting in those, whose parents were deceased, to take the share, the parents, if living, would have taken: but that construction would be setting up my own conjecture against the obvious sense of the words." *Freeman* v. *Parsley,* supra, 423. The language indeed supports the thesis that the court, believing the probable intent of the testator to be that kindred of a lower degree should take per stirpes, nevertheless was unable, under existing law, to effectuate this intention and, instead of adopting a rule which would disinherit such kindred, adopted one which permitted all to share per capita.

It is further suggested that antilapse statutes generally obtaining in the United States, however, prevent the situation which gave rise to the English rule, because they allow a construction of "issue"

in a manner permitting a distribution per capita among the first generation with a per stirpes representation in the next generation, thereby enabling the courts in this country to reach the result which the English court would have preferred to reach. General Statutes § 45-274; 4 Page, op. cit., p. 570. Jurisdictions in the United States, therefore, have tended toward a construction in favor of a per stirpes division and have construed "issue," when its meaning is unrestricted by the context, as including all lineal descendants in the order in which they would be entitled, at the death of the ancestor, to take his property under the law of intestate succession. See *Lyon* v. *Acker,* 33 Conn. 222, 224; *Mayhew's Estate,* 307 Pa. 84, 91, 160 A. 724; note, 13 A.L.R.2d 1023, 1047-52, 1062-65; Hodgman, "Wills —Construction—Meaning of 'Issue' in Testamentary Gifts," 37 Mich. L. Rev. 630, 633; Schnebly, "Testamentary Gifts to 'Issue,'" 35 Yale L.J. 571; Kales, "Meaning of the Word 'Issue' in Gifts to 'Issue,'" 6 Ill. L. Rev. 217. This construction was reached by Justice Holmes while he was a member of the Supreme Judicial Court of Massachusetts; *Dexter* v. *Inches,* 147 Mass. 324, 325, 17 N.E. 551; and has been followed in Massachusetts ever since. *Jackson* v. *Jackson,* 153 Mass. 374, 378, 26 N.E. 1112; *B.M.C. Durfee Trust Co.* v. *Borden,* 329 Mass. 461, 463, 109 N.E.2d 129; *New England Trust Co.* v. *McAleer,* 344 Mass. 107, 112, 181 N.E.2d 569. A like construction of the word "issue" has, for many years, been adopted by us. *Stamford Trust Co.* v. *Lockwood,* 98 Conn. 337, 344, 119 A. 218, and cases cited. In the *Lockwood* case, after stating that the term "issue" must be held to include descendants of every degree, we said (p. 345): "The next question is whether the descendants of any deceased child or

grandchild take *per stirpes* by right of representation of the deceased ancestor, or *per capita*. On this point the will contains no explicit direction, and in the absence of any direction to the contrary we have uniformly held in analogous cases that the *per stirpes* rule of distribution should be adopted." In *Dolbeare* v. *Dolbeare,* 124 Conn. 286, 289, 199 A. 555, we pointed out the mounting criticism of the English rule in the United States.

. Numerous other jurisdictions in this country have refused to follow the English rule. *Wyeth* v. *Crane,* 342 Ill. 545, 549, 174 N.E. 871; *Clarke* v. *Clarke,* 222 Md. 153, 165, 159 A.2d 362; *In re Horrie Estate,* 365 Mich. 448, 454, 113 N.W.2d 793; *In re Trust Estate of Thompson,* 202 Minn. 648, 653, 279 N.W. 574; *Mayhew's Estate,* supra. In New York, the English rule was followed until changed by statute. N.Y. Deced. Est. Law § 47-a; see *Petry* v. *Petry,* 186 App. Div. 738, 740, 175 N.Y.S. 30, aff'd, 227 N.Y. 621, 125 N.E. 924. New Jersey followed the English rule in *Hoyt* v. *Orcutt,* 1 N.J. 454, 457, 64 A.2d 212, but, following the opinion of Chief Justice Vanderbilt in that case, a statute was enacted providing, in substance, that where a will or trust makes a gift to "issue" and contains no contrary expression, the issue will take per stirpes. N.J. Rev. Stat. §§ 3A:3A-1, 3A:3A-2 (Sup. 1961). This more modern and majority rule of construction in this country has been adopted by the American Law Institute as follows: "When a conveyance creates a class gift by a limitation in favor of a group described as the 'issue of B,' . . . then, unless a contrary intent of the conveyor is found from additional language or circumstances, distribution is made to such members of the class as would take, and in such shares as they would receive, under the applicable law of intestate suc-

cession if B had died intestate on the date of the final ascertainment of the membership in the class, owning the subject matter of the class gift." Restatement, 3 Property § 303 (1).

There remains for consideration only the question whether the use of the words "share and share alike" indicates an intent to require a per capita rather than a per stirpes distribution. We think it does not. With respect to the expression of an intent to direct a per capita distribution, the authors of the Restatement comment as follows: "[T]he otherwise applicable rule of distribution is made inapplicable if a 'contrary intent of the conveyor is found from additional language or circumstances.' Such a finding is normally proper when the limitation directs that the issue (or descendants) of B shall take per capita and not per stirpes. . . . When the issue take per capita, a remote descendant of B can share even though his parent is alive and also shares. A direction that distribution be made among the issue 'equally' or 'share and share alike' or 'in equal portions' is less decisive. These words may indicate the intent to have equality either as between the ultimate members of the class or as between the lines of descent from the designated ancestor." Restatement, 3 Property § 303 (1), comment i. In the case before us, there is no express direction that the distribution be made per capita, nor are the individual members of the class of takers described by name. The use of the words "share and share alike" does not indicate an intent by the testatrix to vary the application of the general rule. *Lyon* v. *Acker,* 33 Conn. 222, 224; *New England Trust Co.* v. *McAleer,* supra; see *Welch* v. *Phinney,* 337 Mass. 594, 150 N.E.2d 723.

The construction which we give to the words "law-

ful issue . . . , share and share alike," accomplishes the desirable effect of avoiding competition between children and their living parents. We have said previously that a construction of a will which admits children to compete with their living parents is to be avoided. *Culver* v. *Union & New Haven Trust Co.,* 120 Conn. 97, 108, 179 A. 487; *Daskam* v. *Lockwood,* 103 Conn. 54, 63, 130 A. 92. This principle also receives wide acceptance in other jurisdictions. See *In re Robins' Estate,* 38 F. Sup. 468, 471; *Fidelity Union Trust Co.* v. *Graves,* 139 N.J. Eq. 571, 586, 52 A.2d 750; *Hughes* v. *Wilson,* 85 Ohio L. Abs. 459, 461, 174 N.E.2d 789; *Fahey Estate,* 360 Pa. 497, 503, 61 A.2d 880; *White* v. *Kane,* 178 Tenn. 469, 473, 159 S.W.2d 92; *In re Beach's Estate,* 103 Vt. 70, 82, 151 A. 654, aff'd, 112 Vt. 333, 24 A.2d 340; 57 Am. Jur. 918, Wills, § 1379; 96 C.J.S. 88, Wills, § 711 (b).

It is our conclusion that, no intention to the contrary being found in the language of the testatrix' will or in the circumstances surrounding its execution, the words "lawful issue . . . , share and share alike," must be construed to include the descendants of the son and the daughter of the testatrix in every degree, and that those who are not the immediate issue of the son and the daughter are entitled to share in the distribution of her estate only by right of representation. We hold, therefore, that distribution should be ordered in equal shares to her five grandchildren.

There is error, the judgment is set aside and the case is remanded for the rendition of a judgment returning the case to the Probate Court with direction to order distribution of the remainder of the trust in accordance with this opinion.

In this opinion the other judges concurred.