## IN RE JULIA HENRY'S WILL.

Special Term at Brattleboro, February, 1926.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK and BUTLER, JJ.

Opinion filed October 6, 1926.

*Wills—Intention of Testatrix—Presumption as to Vesting of Remainders—Gift of Personalty to "Heirs"—Time of Vesting of Gift Over—"My Heirs"—Estoppel—Impossibility of Performance of Object of Trust—Inaction of Parties for Many Years in Making Such Claim.*

1. Whether interest of heirs in gift over in will is vested or contingent, *held* to depend upon intention of testatrix, which when ascertained controls, and must be carried out so far as it legally may be.

2. Law favors early vesting of estates, and presumes in favor of vesting of remainders on death of testator, if language used is consistent with an intention to postpone enjoyment only.

3. Gift of personalty to "heirs" merely is primarily to be held to be

to those who would be entitled to take under statute of distributions and to indicate, when no other words in will show use of word in different sense, that they are to take in same manner and in same proportion as though property had come to them as intestate's estate of person whose heirs they are called.

4. When futurity is annexed to substance of gift, vesting is postponed; but, if annexed to time of payment only, legacy vests immediately.

5. Where bequest in trust provided that principal and income thereof should be held intact by trustees until five years after death of last survivor of two brothers and a sister of testatrix, and then, if trustees thought it feasible, fund was to be used to establish a home for indigent women, but also provided that if at the end of said five-year period trust fund and its accumulations were insufficient in trustees' judgment for that purpose, trust property should go to "my heirs," *held* that doubt and uncertainty attached to the gift over, whether remaindermen would receive anything depending upon action of trustees in deciding whether to use fund for such home or not, hence that futurity was annexed to the substance of gift over, and suspended vesting thereof until time when bequest would take effect.

6. In such will, by use of term, "my heirs," *held* that testatrix intended those persons who should be living at time trust was terminated, rather than those living at time of her death.

7. Trust fund created by testatrix in favor of a brother with gift over at his decease to "my heirs," where heirs of each were the same at termination of trust and consisted of a surviving brother and sister and representatives of deceased brothers *held* properly distributed *per stirpes*, and petition of such heirs praying for such distribution was not conclusive upon them as to construction of term "my heirs" in another trust created by same will, where only nieces and nephews of testatrix were living when trust terminated, and context of latter trust provision indicated that term "my heirs" as there used meant persons living at time of its termination.

8. Object of testatrix in creating a trust fund to provide for a home for indigent women, if at certain period trustees thereof thought plan feasible and funds sufficient therefor, *held* not to be such that it could be said to have been impossible that fund

and its additions would make the object for which it was set apart feasible.

9. Inaction of parties for many years in asserting any claim that object of trust provision in will was impossible of performance, *held*, unexplained, to be an implied construction by them that trust provision was capable of being carried into effect.

APPEAL to Supreme Court from a decree of the probate court of the district of Windsor, making distribution of a certain trust fund created by the will of Julia Henry, *Ernest E. Moore*, Probate Judge. The opinion states the case. *Reversed and remanded, with directions.*

*Fred G. Bicknell* and *Herbert G. Tupper* for the appellants.

*Stickney, Sargent & Skeels* and *Wade Keyes* for the appellees.

SLACK, J. This is an appeal from a decree of the probate court within and for the probate district of Windsor, making distribution of a trust fund created by the will of Julia Henry formerly of Chester in said district, deceased.

Julia Henry died March 7, 1903. Her will was duly admitted to probate April 7, 1903. The provision thereof creating the fund, the disposition of which is in controversy, reads as follows:

"I give devise and bequeath the sum of $4,000, in trust in the hands of three trustees for the purpose of establishing if found to be feasible, a home for indigent women and men upon the Henry Homestead in said Chester, meaning the real estate which until her death was owned jointly by Mary H. Henry and Hugh Henry, said fund and the income thereof to be held by such trustees for the period of 5 years after the decease of the last survivor of Hugh Henry, Martha D. Henry and William G. Henry. After the death of the last survivor of the above, if my interest in said Homestead has not been purchased by them or either of them, I bequeath my interest in said Henry Homestead to said trust fund and if then thought feasible with the funds provided by this bequest or otherwise received by said trustees, to open and maintain such home, then I authorize such trustees to purchase the remaining interests in said Homestead, and thereafter to sell and dispose of such parts of said Homestead premises as are not

needed for said home, provided they shall not sell or convey the Homestead Dwelling on the fifty acres of land most contiguous thereto. If said Home is established it shall be called the Henry Home for the Indigent, etc. * * * * * If at the end of said term of 5 years above named the funds and accrued income and funds otherwise received shall not have been sufficient in the judgment of said trustees to warrant the establishment and maintenance of such a Home, then all the property bequeathed by me for that purpose, I bequeath to my heirs''

The fund thus created, together with the income thereof, remained in the hands of duly appointed trustees until the expiration of five years after the death of Hugh Henry (he being the survivor of the three persons named in said provision) which occurred February 3, 1920, when the trustees decided that it was not feasible to establish a home in accordance with the provision of said will, and proceedings were thereupon had to distribute said fund which resulted in the decree appealed from. Such decree distributes the fund as of the date of testatrix's death. The appellants insist that it should be distributed as of the date of the termination of the trust by the trustees.

The testatrix never married. She was survived by two brothers, Hugh and William; a sister, Martha; two children of the brother Hugh; a child of a deceased brother, Arthur; and seven children of a deceased brother, Patrick. Both brothers, the sister, and one of the children of Patrick died before the trust was terminated by the trustees. Neither the brother William, nor the sister, nor the deceased child of Patrick ever married.

Under the decree as made, the child of Arthur receives one-third of the fund; the two children of Hugh, together, receive one-third; and the six surviving children of Patrick receive the remaining one-third. Under the distribution contended for by appellants, who are five of the surviving children of Patrick, the nine nephews and nieces of the testatrix who were living at the time the trust was terminated by the trustees would share the fund equally.

[1-4] The first question that confronts us is whether the gift over to ''my heirs'' took effect in interest from the date of testatrix's death, or whether the interest of such heirs was merely contingent and liable to be defeated by the trustees by putting the fund to the use contemplated by the testatrix, in short, whether the interest of such heirs is a vested or a contingent one. This

depends, of course, upon the intention of the testatrix which, when ascertained, controls, and must be carried out so far as it legally may be. *Harris* v. *Harris' Estate,* 82 Vt. 199, 72 Atl. 912. To aid us in discovering such intention we invoke certain well-recognized rules of construction. They are these: (1) "The law favors the early vesting of estates and presumes in favor of the vesting of remainders in interest on the death of the testator, if the language used is consistent with an intention to postpone the enjoyment only." *In re Robinson's Estate,* 90 Vt. 328, 98 Atl. 826. Or to put it in another way: "No estate will be held contingent unless very decided terms are used in the will, or it is necessary to so hold in order to carry out the other provisions or implications of the will." *In re Tucker's Will,* 63 Vt. 104, 21 Atl. 272, 25 A. S. R. 743. (2) "A gift of personalty to 'heirs' merely, whether to one's own heirs or the heirs of another, is primarily to be held to be to those who would be entitled to take under the statute of distributions, and to indicate, when there are no other words in the will showing that the testator used the word 'heirs' in a different sense, that they are to take in the same manner and in the same proportions as though the property had come to them as intestate's estate of the person whose heirs they are called." *In re Irish's Will,* 89 Vt. 56, 94 Atl. 173, Ann. Cas. 1917C, 1154. (3) "When futurity is annexed to the substance of the gift, the vesting is postponed; but, if annexed to the time of payment only, the legacy vests immediately. *In re Mansur's Will,* 98 Vt. 296, 127 Atl. 297.

[5, 6] Applying these rules of construction, we have held that where a testator bequeaths the use and income of property for certain purposes until the happening of an event, which must necessarily happen, sooner or later, by the efflux of time, and not a dubious or uncertain one, with a gift over of the property it-self, or the property and unused income, to other beneficiaries, the interest of the latter vested immediately upon the testator's death. Among the cases so holding are, *Harris* v. *Harris' Estate, In re Tucker's Will,* and *In re Robinson's Estate,* cited above, and *Burton* v. *Provost et al.,* 75 Vt. 199, 54 Atl. 189, and *Jones* v. *Knappen,* 63 Vt. 391, 22 Atl. 630, 14 L. R. A. 293. But in the Irish Will Case, *supra,* where the principal of the trust, as well as the income and interest arising therefrom, was to be used and expended as needed and required for the proper and comfortable support of the testator's mother for the full term and period of

her natural life, and to defray the expenses of her funeral and burial, it was held that futurity was annexed to the substance of the gift, and consequently the vesting was suspended until the time when the bequest should take effect; because, as was said: "It was only so much of said sum (the principal) with accrued interest thereon as should be remaining at the termination of the trust—and it might be much, or little, or none at all—that was given over." It was the doubt and uncertainty which attached to the gift over in· that case, as was pointed out in *In re Robinson's Estate, supra,* that distinguished it from the other cases cited above. It is perfectly obvious that the doubt and uncertainty that attaches to the gift over in the instant case is equally great. Whether the remaindermen received anything depended entirely upon the action of the trustees, whether they decided to use the fund for a home or not—an event, the uncertainty of which cannot be questioned. The Irish Will Case is full authority for, and compels, the conclusion that futurity in the instant case was annexed to the substance of the gift over, and consequently the vesting thereof was suspended until the time when the bequest would take effect. For a discussion of the construction of futurities see *In re Mansur's Will, supra.* The fact that the fund was not to be distributed until five years after the death of testatrix's surviving brother or sister, when her only living heirs would be her nephews and nieces, is significant, and tends to show, we think that by the words "my heirs" used in the gift over testatrix intended those persons who should be living at.the time the trust was terminated rather than those who were living at the time of her death. This language was manifestly apt and accurate to express such intention, since the persons living at the former date were as truly her heirs as were those living at the latter date, though not of the same degree.

[7] Appellees call attention to the fact that appellants joined with their Uncle Hugh, Aunt Martha, and· others in a petition to the probate court, after the death of testatrix's brother William, to have a trust estate created by testatrix for said brother, with a gift over to "my heirs" distributed, wherein they represented that the heirs of William and the testatrix were the same persons, and prayed that such fund be distributed to the heirs of the testatrix, and that the prayer of such petition was granted and the fund was distributel *per stirpes;* and insist that the parties thereby construed the words "my heirs" used in

connection with the gift over in that instance in accordance with the construction now contended for by appellees; and further that words occuring more than once in a will shall be presumed to be used always in the same sense, unless a contrary intention appears from the context of the whole instrument or unless the words be applied to different subjects. Concerning the first of these propositions, we do not think the facts entitled to the force claimed for them, in the circumstances. It was true that the heirs of Julia and her brother William were the same persons at the time of the latter's death. Neither had ever married, and the heirs of each were, then, the surviving brother, Hugh, the sister, Martha, and the representatives of deceased brothers. That being so that fund was properly distributed *per stirpes,* whether treated as belonging to William's estate or to Julia's estate, and it was immaterial, too, whether it was distributed as of the date of Julia's death or as of the date the trust terminated, since the same persons took, in the same proportions, in either case. The situation was entirely different when the trust in question was terminated, since only nephews and nieces were then living. As to the other proposition, the rule of construction invoked by appellees is undoubtedly correct, but we think that the context of the trust provision in question shows that the testatrix intended the words "my heirs" used in that connection to mean the persons living at the time the trust terminated. Nor is it certain that the trust created for William, wherein like words were used, would not have received a like construction, had it become necessary to construe that provision, since that trust was similar, in legal effect, to the one in the Irish Will Case.

The appellees argue that the equitable estate in this trust fund remained in the heirs of the testatrix until the fund itself was put to the use specified in the will; and that her heirs take the estate created by the will by descent and not by devise. Concerning these propositions it is enough to say that it has not been pointed out, nor are we able to discover, wherein this case differs in principle, in these respects, from the numerous cases already cited. Here, as in those cases, the fund was given in trust for a certain purpose, with a gift over. And if "my heirs" means the heirs of testatrix living at the time the trust was terminated by the trustees, as we hold it does, the fund goes to the nephews and nieces then living in equal shares, and whether they take by

descent or under the will is immaterial so far as the result is concerned.

[8]    It is argued, too, that the object for which such trust was created was impossible of execution from the beginning, because the fund was grossly insufficient for that purpose, and there was no provision in the will whereby it should be permitted to accumulate until it was sufficient.    Admitting that $4,000 was inadequate to establish such a home as testatrix contemplated, it cannot be said when the scheme which she obviously had in mind, and the way in which she undertook to work it out, are considered, that the object was incapable of fulfillment from the outset.    She provided by the item of the will creating the trust, and also by item 3 thereof, for additions to this fund.    Moreover, her object was to establish a home for indigent women and men on the Henry homestead, which appellees say was the ancestral estate of the family, the land having been acquired by testatrix's grandfather who was an early settler of that town, and she entertained hopes, as the language of the will clearly indicates, that others, probably her brothers or sister, or both, would join in the project.    To this end she provided that the fund should remain intact until the expiration of five years after the death of the last surviving brother or sister.    That her hopes were never realized is certain; that they may have been unwarranted now seems probable; but from what appears it cannot be said to have been impossible that said fund would receive sufficient additions to make the object for which it was set apart feasible.

In September, 1912, the testatrix's brother, Hugh, purchased her interest in the Henry homestead.    The appellees insist that it then became impossible to carry out the object of the trust.    While certain language in the trust provision lends support to this claim, it is not borne out by the language of that provision when taken as a whole.    We need not repeat what has been said concerning testatrix's object and the scheme she adopted for putting it into effect.    With this in mind, however, we cannot believe that she intended the entire project to end if perchance one of her brothers or her sister purchased her interest in the old homestead.    We think the only fair construction of the trust provision, taken as a whole, is that if at the expiration of five years after the death of the surviving brother or sister the fund which the testatrix had provided and ''accrued income and funds otherwise received'' were sufficient in the judgment of

the trustees to warrant the establishment and maintenance of the home, the fund provided by her and its accrued income was to be used for that purpose, otherwise it was to go to her heirs, and we so hold.    In determining the question which devolved upon the trustees, the purchase price of the Henry homestead would, of course, be a necessary, perhaps the determining factor, whether they were obliged to acquire title to the whole of it or such title as was outstanding aside from the testatrix's interest, since we have no doubt that the home was to be established there if at all.

[9]    Our conclusion concerning the last two questions raised by appellees are borne out by the construction impliedly given the trust provision by the parties.    If the trust was impossible, and therefore ineffective, at the outset, or became so in 1912 when Hugh purchased testatrix's interest in the Henry homestead, there is no apparent reason why the parties waited twenty-two years in the one instance, and thirteen years in the other, before asserting their claims to the trust fund.    Since no explanation for this inaction is offered, it is fair to assume that it was due to the fact that the parties construed the trust provision to mean precisely what we think it means.

*Decree reversed and set aside; cause remanded with costs, with directions that a decree be entered in accordance with the views herein expressed.    To be certified to the probate court.*

TAYLOR, J., sat in the hearing of this case, but by reason of his death did not take part in its decision.