# In Re Trust Estate of Harris

[141 A2d 653]

March Term, 1958

Opinion Filed May, 6, 1958.

*Arthur L. Graves and Yandell, Smith & Page* for the appellants.

*Kyle T. Brown, Richardson & Caldbeck* and *Witters, Longmoore & Akley* for the appellees.

**Shangraw, J.** This is an appeal from a declaratory judgment order made by the Probate Court, District of Caledonia. Luther B. Harris, late of Lyndon, Vermont died November 12, 1913, leaving a last will and testament dated October 8, 1910, and codicil dated August 7, 1912, in accordance with which the residuary estate was decreed June 25, 1914, to William S. Harris, W. E. Riley, and Ida S. Pearl, named testamentary trustees. Roy N. Howard, petitioner, was appointed trustee June 13, 1957, in place of William S. Harris, the last survivor of the original trustees, and is now the sole trustee.

Mr. Howard, trustee, brought the petition seeking a judgment order determining whether the remainder interest under the testator's last will and testament was vested as of the date of the testator's death or contingent, and for a determination of the persons to whom the principal of the trust estate should be decreed. William S. Harris, Lucius D. Harris, and Theo V. Harris, sons of the deceased, were the only heirs at law of said testator at the time of his decease.

The questions presented for consideration are: (1) Did the remainder interest become vested as of the date of testator's death, or the date of the decease of all the persons hereinafter named in paragraph "fourteenth" of the Last Will and Testament; and (2) to whom of the heirs of Luther B. Harris is the residue or trust estate to be apportioned, and, do those so entitled take per capita or per stirpes.

Said Last Will and Testament, here material, reads as follows:

"EIGHT: It is my will that the income of the residue of my estate be used by the trustees hereinafter named for the higher education of my lineal descendants, if any such desire anything beyond a common school education, under the direction and approval of said trustees. This trust is for the purpose of enabling said descendants to go as far as they like beyond the circumstances in which they may be placed, and the said trustees hereinafter named may, if they think best, use such part of the principal as is required toward the higher education of worthy and industrious pupils among the aforementioned children, and I especially commend to their consideration my grand-daughter, Bessie Harris, daughter of Theo V. Harris and Alice Harris.

"NINTH: It is my will that the trustees hereinafter named carefully consider any suggestions that Olive E. Harris may make regarding the higher education of said lineal descendants, and give them such weight as they deem wise.

"TENTH: It is my will that such part of the income of the trust last above devised remaining unexpended at the end of each year of the life of this trust shall at the end of each year be equally divided between my sons, William S. Harris, Lucius D. Harris and Theo. V. Harris.

"ELEVENTH: In case of the death of any of my sons who leaves a widow or issue, it is my will that his widow receive his share while she remains single, and if there be issue, said issue shall receive said share upon the death or marriage of such widow.

"TWELVE: I do nominate and appoint William S. Harris, W. E. Riley and Ida S. Pearl, all of Lyndon in the County of Caledonia and the State of Vermont, as trustees of the trusts hereinbefore mentioned without bond, with full power to sell and convey any real estate,

and no vacancies shall be filled until all of said trustees have deceased, resigned or otherwise neglected to fill the office of trustee, at which time one trustee shall be appointed.

"FOURTEENTH: At the death of William S. Harris, W. E. Riley, Ida S. Pearl, Olive E. Harris, Lucius D. Harris and Theo V. Harris, then said trusts shall terminate and my estate shall be distributed according to law."

The codicil omitting signature, date, execution, etc., reads:

"This is my first codicil to my last will.
I direct that if any beneficiary under my last will, fails to support their family that the trustees of my estate are hereby authorized to use such of the share of the beneficiary to support or educate said family as they think best, and to deduct said amount from the share of said beneficiary."

Luther B. Harris was divorced by his wife Olive in 1892 who survived him. He was survived by his three children, William S. Harris, born in 1876, and deceased May 25, 1957; Lucius D. Harris, born in 1877, deceased August 30, 1943, and Theodore V. Harris, sometimes written Theo V. Harris, born 1879, deceased February 10, 1951.

William S. Harris was unmarried when the testator died and survived all the other persons specifically named in Clause Fourteenth of the will in question. He married Grace Belle Carter in 1916 who died in 1948. He did not remarry and was survived by only two heirs, William Spencer Harris, son, and Beverly Harris, daughter, twins born in 1924, who are living.

Lucius D. Harris married Lulu E. Wilkie, May 28, 1910, and was married to her at the time of the death of the testator in 1913. One daughter was born of said marriage in 1911, Arlene Althea Harris, now Arlene Harris Gray. She is living. Lucius died August 30, 1943, a resident of the State of California. He was also survived by Lulu Wilkie Harris, wife by his first marriage, whom he divorced, and by Mary Wiggin Harris, wife by his second marriage.

Theodore V. Harris was married to Alice Augusta Derby in 1897. They were divorced in 1936, and she died in 1955. On May 25, 1957, he was survived by Ada M. Harris, his widow, whom he married in 1945. He was also survived by his four children, his only heirs, Raymond John Harris, born in 1898, Elizabeth (Bessie) Harris Brown, born in 1901, Derby Theodore Harris, born in 1904, and Alice Harris Paris, born in 1907, the issue of his first marriage. His widow and four children are living.

A "Dedication Deed" was executed by W. S. Harris, W. E. Riley and Ida S. Pearl, Trustees of said trust estate. It relates to the home place of the testator, and contents, and to the disposition of them during the life of William S. Harris, and thereafter; and among other things purports to involve the Town of Lyndon in a conditional control and management program beyond the life of the trust estates created under the Will. There has been no delivery or acceptance of the deed, nor has any effort been made to establish any potential right thereunder by the Town of Lyndon in proceedings before the probate court.

Upon and after hearing of the petition for a declaratory judgment the court made a decree, excepted to by appellants, which so far as here material reads:

> "(A) The Last Will and Testament of Luther B. Harris created a contingent remainder, vesting in his heirs at law the whole thereof, as of the time of the termination of the trust. It was his intention to have the remainder, if any portion remained after satisfying the provisions relating to invasion of the principal for the benefit of his certain and uncertain lineal descendants, distributed "according to law", that is, in accordance with the law of intestacy in effect at the time the trust terminated, which was on May 25, 1957, more than forty-three years after his decease. The next of kin of the testator at the time were those in equal degree of relationship to him, namely, his seven grandchildren: William Spencer Harris, Beverly Harris, Arlene Harris Gray, Raymond John Harris, Elizabeth (Bessie) Harris Brown, Derby Theo-

dore Harris and Alice Harris Paris. They are living, and are the only persons intended by the testator to share in the contingent remainder, under Clause Fourteenth of his Will, where he stated: "at the death of William S. Harris, W. E. Riley, Ida S. Pearl, Olive E. Harris, Lucius D. Harris, and Theo V. Harris, then said trusts shall terminate and my estate shall be distributed according to law." The shares of said grandchildren are equal, taking per capita, not per stirpes, or one-seventh share each, pursuant to Section 3042, sub-section V. Vermont Statutes, Revision of 1947, which reads: "If none of the kindred above named survives the decedent, the estate shall descend in equal shares to the next of kin in equal degree; but a person shall not be entitled, by right of representation, to the share of such next of kin who has died."—meaning in this case, on May 25, 1957.

"(B) All rights of the petitionees, Lulu W. Harris, Mary Wiggin Harris and Ada M. Harris under said Will have been fully satisfied. They do not share in the remainder distribution.

"(C) The so-called 'Dedication Deed', designated Exhibit D in the petitioner's petition, has no force and effect, either legal or equitable, on the administration or distribution of the remainder trust estate after the decease of William Harris on May 25, 1957. The petitioner, Roy N. Howard, as trustee, of said trust estate, holds the complete legal and equitable title to the real estate, described as the home place in said instrument, free from any claim thereunder of the petitionee, Town of Lyndon."

The residue and remainder of the estate of Luther B. Harris decreed on June 25, 1914 to the three named testamentary trustees in trust was appraised at $44,381.15.

In construing a will the first and chief object is to ascertain the intention of the testator, from the language used, since, so far as it may be legally carried out, that governs. To determine such intention, the court is to take the instrument by

its four corners, consider it in all its parts, and give effect to its language read in the light of the relation of the parties concerned and the circumstances attending its execution. Stated differently, the court is to place itself in the shoes of the testator, and his language is to be construed and interpreted in the light afforded by the state of facts with which he was surrounded, and his relations to the various objects of his bounty. Force and effect must be given to every part of the will, if possible, since it is not to be presumed that the testator used an unnecessary word, or one to which no proper force can be given. *Tuttle* v. *Tuttle*, 112 Vt 271, 278, 23 A2d 523; *In re Estate of Simanton*, 118 Vt 202, 204, 104 A2d 918.

The determination of the date the interest of the heirs or lineal descendants becomes vested depends, of course, upon the intention of the testator which, when ascertained, controls, and must be carried out so far as it legally may be. *Harris* v. *Harris' Estate*, 82 Vt 199, 205, 72 A 912. In determining such intention we invoke certain well-recognized rules of construction. These are: (1) The law favors the early vesting of estates and presumes in favor of the vesting of remainders in interest on the death of the testator, if the language used is consistent with an intention to postpone the enjoyment only. *In re Robinson's Estate*, 90 Vt 328, 332, 98 A 826. Or to put it in another way, no estate will be held contingent unless very decided terms are used in the will, or it is necessary to so hold in order to carry out the other provisions or implications of the will. *In re Tucker's Will*, 63 Vt 104, 105, 21 A 272. (2) A gift of personalty to "heirs" merely, whether to one's own heirs or the heirs of another, is primarily to be held to be to those who would be entitled to take under the statute of distributions, and to indicate, when there are no other words in the will showing that the testator used the word 'heirs' in a different sense, that they are to take in the same manner and in the same proportions as though the property had come to them as intestate's estate of the person whose heirs they are called. *In re Irish's Will*, 89 Vt 56, 59, 94 A 173. (3) When futurity is annexed to the substance of the gift, the vesting is postponed; but, if annexed to the time of payment only, the legacy vests

immediately. *In re Mansur's Will*, 98 Vt 296, 299, 127 A 297; *In re Henry's Will*, 99 Vt 437, 441, 134 A 632, 49 ALR 169.

Applying these rules of construction, we have held that where a testator bequeaths the use and income of property for certain purposes until the happening of an event, which must necessarily happen, sooner or later, by the efflux of time, and not a dubious or uncertain one, with a gift over of the property itself, or the property and unused income, to other beneficiaries, the interest of the latter vested immediately upon the testator's death. Among the cases so holding are, *Harris* v. *Harris' Estate*, *In re Tucker's Will*, and *In re Robinson's Estate*, cited above. *In re Henry's Will, supra*.

■ In harmony with what has been said is the rule that the law favors the early vesting of estates; a rule which is subordinate only to the prime rule in the construction of wills that the intention of the testator, so far as may be legally carried out, is to govern. *Harris* v. *Harris' Estate, supra*, at page 205.

With the foregoing rules of construction in mind we now take the will "by its four corners." On the date of the execution of the will the testator had four grandchildren, sons and daughters of Theodore Harris. A daughter, Arlene, was born to his son Lucius D. Harris and wife in the year 1911 previous to the date of the codicil. By reference to paragraph Eight of the will the testator's concern for the grandchildren is evident, particularly as to their education, in that he directed the trustees to use the income of the trust estate "for the higher education of my lineal descendants" * * * further saying "this trust is for the purpose of enabling said descendants to go as far as they like" * * * and the said trustees * * * "may, if they think best, use such part of the principal as is required toward the higher education." His sons William, Lucius and Theodore then being of the ages of 35, 33, and 31 respectively the testator apparently had in mind the education of his grandhildren. In paragraph Ninth of said will testator suggests "that the trustees hereinafter named carefully consider any suggestions that Olive E. Harris may make regarding the higher education of said lineal descendants." The Tenth paragraph of the will provides that the income from the trust remaining *unexpended*

at the end of each year of the life of said trust be divided equally between his three sons. His preference for the education of his grandchildren again becomes evident.

It is to be borne in mind that at the time of the execution of the will William was unmarried; Lucius married; no children; and Theodore married, with four children. By reference to paragraph Eleventh of said will the widow of any of his sons was to receive only such share of the income as the husband, if living, would have received, while she remained single, and upon her death or marriage the issue of said marriage, if any, to receive said share of the income. Testator was concerned for the issue of any son who might decease, and in view of the provisions contained in this paragraph of his will it is presumed he also had in mind after-born grandchildren.

In paragraph "Fourteenth" testator declared that at the death of his three sons, the trustees, and Olive E. Harris "then said trusts shall terminate and my estate shall be distributed according to law." We conceive the phrase "according to law" to mean in accordance with the statute of distribution or to my lawful heirs. The word "then" in this will is used as an adverb of time. By implication at least it may be said that the above quoted portion of the sentence from the will may be construed to read "then" said trusts shall terminate and *then* my estate shall be distributed according to law.

The wording of the codicil directing that "if any beneficiary under my last will, fails to support their family that the Trustees of my estate are hereby authorized to use such of the share of said beneficiary to support or educate said family as they may think best, and to deduct said amount from the share of said beneficiary" at least evidences lack of confidence in one or more of testator's sons, and conversely testator's interest in the welfare of his grandchildren. The word "share" as used in paragraph Eleventh of the will clearly refers to income and as such, when used in the codicil.

When a man disposes of his property by will, it is fair to presume that he does not intend to die intestate nor to become intestate after death, and so courts lean against intestacy. *Weatherhead* v. *Stoddard*, 58 Vt 623, 629, 5 A 517.

If the testator had omitted the Fourteenth paragraph of his will, he would have died intestate as to the property not disposed of in the first thirteen paragraphs. It would then follow that the trust estate would have descended at his death by operation of law to his three sons. If this had been testator's intention this paragraph of the will might well have been omitted. We do not consider this paragraph to be surplusage and a nullity.

In the Irish Will Case, *supra*, where the principal of the trust, as well as the income and interest arising therefrom, was to be used and expended as needed and required for the proper and comfortable support of the testator's mother for the full term and period of her natural life, and to defray the expenses of her funeral and burial, it was held that futurity was annexed to the substance of the gift, and consequently the vesting was suspended until the time when the bequest should take effect, because, as was said: "It was only so much of said sum (the principal) with accrued interest thereon as should be remaining at the termination of the trust—and it might be much, or little, or none at all—that was given over." It was the doubt and uncertainty which attached to the gift over in that case, as was pointed out in *In re Robinson's Estate, supra,* that distinguished it from the other cases heretofore cited. *In re Henry's Will, supra,* at pages 441, 442. In the instant case we are mindful of the discretionary power given to the trustees to invade the principal for educational purposes. The amounts to be expended were not determinable at the time the will was executed, nor limited by the terms therein. It is conceivable that the entire trust estate could have been utilized for this purpose. In support of the decree it is also interesting to note that, by the terms of the will, neither the sons, nor their widows were to receive any portion of the corpus of the trust, only the income, if any, and then under conditions and limitations expressed in the will. If the remaindermen, in this case, received anything it depended entirely upon the extent of educational demands and the action of the trustees relating thereto,—that is, whether they decided to use the corpus of the fund for such purposes or not—the uncertainty of which cannot be questioned.

The principal question raised by the appellants is the ownership of the remainder interests in the trust estate, which,

in turn, depends upon whether the remainders are construed or classified as vested or contingent on the date of the testator's death. It is urged by the appellants that said interest became vested on the date of testator's death, not contingent, and further that the expression "according to law" has the effect of meaning, in this case, the legal representatives of each son. We consider V. S. 3042, sub-section "V" as controlling on the division or distribution of the remainder estate, hence, in view of our ultimate holding, further consideration of these points appears unnecessary.

The appellants further excepted to the judgment order of the probate court on the additional grounds that said decree is (1) not warranted by the pleadings; (2) not supported by the findings; and (3) not supported by the evidence. In their brief the appellants generally claim the conclusion that the remainder was contingent by reason of uncertainty as to the ultimate beneficiaries, is not supported in view of the absence of findings as to the amount of the principal of said trust, its increase, if any, income, demands made upon such funds for educational purposes, and that there was no testimony taken which would support any finding of disproportion between assets available and demands made on the trust estate. Further that there is nothing in the file to show events which impaired, invaded, or exhausted the principal, and, on the contrary, that the file affirmatively establishes at no time was the principal impaired or threatened. We have examined the file and transcript. They do not change the determination we have made.

The language of the will, read in the light of the surrounding circumstances, leads us to the conclusion that it was the intention of the testator to postpone the vesting of the beneficial remainder interest until the termination of the trust. The remainder interest of the estate was contingent. That interest became vested May 25, 1957. The seven grandchildren named in the judgment order share equally, that is, per capita and not per stirpes. *In re Martin's Estate*, 96 Vt 455, 458, 120 A 862.

No question is presented as to the propriety of paragraphs (B) and (C) of the judgment order.

*Judgment order affirmed. To be certified to the probate court.*